**CARLISLE v. STATE ex rel. HARRIS, Co. Atty.**

No. 26924. Nov. 24, 1936.

Coffey & Coffey, for plaintiff in error.

Richard K. Harris, Co. Atty., and B. A. Lewis, Asst. Co. Atty., for defendant in error.

BUSBY, J.   This proceeding was instituted by the state of Oklahoma on relation of the county attorney of Washington county, Okla., to confiscate and destroy 67 cases of intoxicating liquor. It originated in the county court of Washington county. Plaintiff in error, P. H. Carlisle, intervened before judgment in the lower court and sought to be declared the owner of the liquor and entitled to the possession thereof. The cause was tried to the court without the intervention of a jury, and at the conclusion of the evidence judgment was entered in favor of the state and against the intervener declaring the intoxicating liquor subject to confiscation and forfeiture and ordering the destruction thereof. The intervener brings the case to this court on appeal, appearing herein as plaintiff in error.

The judgment and decision of the trial court is attacked upon the theory that it is not supported by the evidence. In deciding the merits of this contention the real question is whether the trial court was obliged to accept the intervener's version of the transactions involved.

It is the plaintiff in error's contention that under the undisputed evidence in this case he was in lawful possession of the liquor in the state of Missouri, but that robbers took the liquor away from him and, without his knowledge or consent, brought it across the state line into Oklahoma, where it was apprehended and seized by the sheriff of Washington county.

Before examining the evidence for the purpose of determining the conclusive character thereof, we shall briefly review the applicable rules of law appropriate for consideration in placing value upon this evidence.

"Undisputed credible testimony, not inherently improbable, is usually binding upon the court or jury, but evidence is not regarded as undisputed if it is at variance with the facts and circumstances in the case or reasonable inferences to be drawn therefrom or from other evidence." Wise v. Wise, 175 Okla. 310, 52 P. (2d) 715. See, also, Reed v. Scott, 50 Okla. 757, 151 P. 484; Lowe v. Hickory, 176 Okla. 426, 55 P. (2d) 769.

Conversely, a court is not bound to accept testimony as true merely because there is no direct testimony   contradicting it, where it contains inherent improbabilities or contradictions which alone, or in connection with other circumstances in evidence, justify an inference that the evidence is false. Davis, etc., v. Wyskup, 97 Okla. 239, 223 P. 357; State v. Nielsen et al. ((Mont.) 187 P. 639.

While an interested party is a competent witness to   testify in   his own behalf, it is proper for the court to consider the interest of the witness in placing of value upon the testimony given.   It is doubtful if the court is authorized to wholly disregard the testimony of an interested witness solely because of the interest of that witness. However, the interest, when apparent, justifies a   careful scrutiny, and the court is not bound by the evidence when it is fraught with omissions, uncertainties, contradictions, and inherent improbabilities. Miller v.   Columbia Trust Co. (Utah) 225 P. 609.

Bearing in mind these principles, we pass to a consideration of the evidence reflected by the record in this case.

On or about the 12th day of July, 1935, the sheriff of   Washington   county   found the liquor involved in this action on the premises of one Earl Parker, about six miles northeast of Copan. It was in a Ford truck with an Oklahoma license plate thereon. A man by the name of Clifford David was found in close proximity.   David had a gun. He was arrested upon the theory that he was guarding the liquor. Both Parker and David were charged with violating the prohibitory law in the county court   of Washington county. Apparently these misdemeanor charges were pending and undisposed of at the time this cause was tried.

P. H. Carlisle, in support of his petition in intervention,   testified as a   witness in his own behalf. His testimony was in substance as follows: That he is a resident and citizen of the state of Missouri; that prior to the repeal of the Eighteenth Amendment he was engaged in the garage business in that state; that thereafter he   broadened the scope of his business activities and entered into the wholesale and retail liquor business in Missouri;   that   some time before the transactions   involved in this controversy took place his wholesale liquor license issued by the state of Missouri had been   revoked by reason of   his   failure to   place state tax

stamps upon liquor; that at the time of the revocation of this license he had in his possession a considerable quantity of liquor, including the liquor involved in this action; that there were no state tax stamps upon this liquor and that only an authorized wholesale dealer could procure such stamps for the purpose of placing them thereon. It further appeared from his testimony that he had stored this unstamped liquor at some place in Missouri about four miles from the town of Seneca, which point was closer to the port of entry on the Oklahoma line than was the town of Joplin, where he lived. He further testified that on the afternoon of the 12th day of July he received information from a man by the name of Harry Ross that his liquor was going to be "hi-jacked". The officers of the law were not notified of the threatened robbery. (In this connection it should be noted that either he or the sheriff is mistaken about the date, since the sheriff testified that he recovered the liquor on the afternoon of the 12th, which would not allow sufficient time for the events to transpire which we shall hereafter relate.)

Mr. Carlisle testified that, having received this information, he took a truck out of his garage having an Oklahoma license tag on the same belonging to a man who lived at Enid. He went to the place where the liquor was stored and loaded the same upon the truck at about 8 o'clock in the evening. When asked upon cross-examination where he intended to take the liquor after it was loaded, he said that he did not know and had no place in mind. About 11 o'clock p. m., he left the place where the liquor had been stored for the purpose of obtaining something to eat and returned about 12 o'clock. He did not leave a guard with the truck, although it appears that there were other persons on the premises. About 2 o'clock in the morning the "hi-jackers" arrived. They, according to his testimony, took the liquor and loaded it into another truck and other conveyances and left leaving one of their number to prevent him from fo'lowing until they had been gone about 30 minutes. According to Mr. Carlisle, one of those present at the time, a Mrs. Johnson, took the truck number from the truck into which the whisky had been loaded by the robbers. Armed with this information, Mr. Carlisle testified that he went and called the port of entry asking them if the truck had passed. About 4 or 5 o'clock in the morning he notified the sheriff or police at Vinita, Okla, of the loss of the truck.

It is somewhat difficult to understand why Mr. Carlisle loaded his whisky into a truck at 8 o'clock in the evening without any known destination, unless he was then afraid that the robbers of whom he had been warned would arrive at the place of storage that very evening. If he was impelled by this fear of immediate robbery to load the truck, it is difficult to understand why he did not immediately remove the coveted property to some place of safety. It is likewise peculiar, if this fear was his governing motive, that he should depart from the premises at 11 o'clock and not return until 12, leaving the loaded truck unguarded.

Could it be possible that the truck actually left the premises as soon as it was loaded and that the alleged robbery occurred in Oklahoma in dry territory? Could it be possible that the story about the loaded truck with no destination was used for the purpose of making it appear that the robbery took place in Missouri and explaining the lapse of time between the loading of the truck and the report of the robbery?

The testimony of this interested witness as above outlined is wholly uncorroborated, although there were others present according to Mr. Carlisle's testimony. The others were not produced as witnesses, nor were their depositions taken. It is true that Mr. Carlisle did report the robbery, but this occurred in the early hours of the morning. The report to the police at Vinita was about 4:30 or 5 o'clock a. m., approximately eight hours after the truck had been loaded.

There are other elements of uncertainty in the evidence which in the interest of brevity we deem it unnecessary to review in detail. For instance, it is reflected that Mr. Carlisle had permission of the officers of the state of Missouri to dispose of his unstamped liquor to wholesalers there. It is a fair inference that such disposal could not have been made at a profit. At any rate, he did not undertake to make such disposition. This showing in the evidence suggests a motive for transporting the unstamped liquor into a dry state, where it could be profitably sold through illicit channels to the retail trade.

We do not mean to say from our review of this evidence that the version of the affair given by Mr. Carlisle was untrue, but we do say, and hold, that there was sufficient uncertainty and improbability in the uncorroborated evidence of this interested witness to authorize the trial court, upon which the duty of weighing the evidence is imposed, to disregard the same.

234

Without alluding to this particular case, it is proper to observe that a robbery story offers a convenient means of explaining the illegal presence in Oklahoma of intoxicating liquors by those who seek to recover the same. Those who have in reality been deprived of their property consisting of intoxicating liquors in states where the possession thereof is lawful are entitled to the full protection of the courts of this state. But when they invoke the protection afforded by the courts of this state, they owe to them a measure of responsibility. When their stories about robberies occurring in other states are susceptible of corroboration, the available corroborating evidence should be produced.

The trial courts of this state are not bound to accept as true the improbable version of an interested witness whose story, though susceptible of corroboration, is uncorroborated.

The judgment of the trial court is affirmed.

OSBORN, V. C. J., and BAYLESS. WELCH, CORN, and GIBSON, JJ., concur. McNEILL, C. J., and RILEY and PHELPS, JJ., absent.