In re MORRISON'S ESTATE.
MORRISON et al. v. FIFE.

No. 27451. Dec. 7, 1937.

C. E. Baldwin, O. H. Searcy, J. B. Underwood, and E. A. Ellinghausen (Leslie W. Lisle, of counsel), for plaintiffs in error.

George H. Jennings and Miller, Lytle & Wildman, for defendant in error.

PHELPS, J. Duffy Morrison died intestate, unmarried and without issue, leaving estate which is the subject of this controversy. Duffy Morrison was the son of Sallie Morrison, and Sallie Morrison was the daughter of Liza, or Eliza, Frank. Timmie Fife, claiming to be the son of Liza, or Eliza, Frank and half brother of Sallie Morrison, the mother of the deceased, Duffy Morrison, makes claim to the entire estate of Duffy Morrison, alleging that, as a maternal half uncle of the deceased, he is the nearest surviving relative and entitled to inherit the estate, while plaintiffs in error allege they are cousins of deceased, deny the relationship of Timmie Fife to deceased, and claim they are entitled to inherit the estate.

The county court of Tulsa county found that Timmie Fife was the son of Liza Frank and maternal half uncle of deceased, and entitled to inherit the estate. From this finding and order the cousins, plaintiffs in error here, prosecuted their appeal to the district court of Tulsa county, where the finding and judgment of the county court were in all things affirmed, from which judgment of the district court this appeal is prosecuted.

Plaintiffs in error first contend that the evidence does not justify the finding that Timmie Fife was the son of Liza and, in the alternative, claim that if he was the son of Liza Frank, the evidence does not show that his father, Ben Fife, and Liza were ever married, and that he would not be entitled to inherit Liza's grandson's estate if he were Liza's illegitimate son, unless he had been legitimatized as provided by section 1619, O. S. 1931.

An examination of the record convinces us that the evidence is abundant to support the conclusion that Timmie Fife was the son of Liza Frank. It appears that when Liza Frank died in 1877 Timmie Fife received a portion of her property and was then recognized by the family as a son. A number of witnesses testified that he lived in the home of Liza Frank and was generally regarded as her son. A paragraph of the will of Sallie Morrison was introduced in which she said:

"I hereby give and bequeath unto my half brother Timmie Fife, the sum of $500. * * *"

Timmie Fife himself testified that he was eight or ten years of age at the beginning of the Civil War and lived at Hichita with his mother, Eliza Barnett, or Eliza Frank, and William Frank, her husband. They went south during the Civil War, and after the war they returned to Hichita, where he continued to live with his mother until she died, when he was 15 or 16 years of age. After his mother's death he went to live with his father, Ben Fife, at Concharte, near what is now Haskell, Okla., and that his "father, Ben Fife, died about a month before the Land Office was opened 35 or 36 years ago."

The question as to the legitimacy of Timmie Fife presents greater difficulties. No witness testified positively that there ever was a marriage, either ceremonial, common law, or by Indian custom, between Ben Fife and Liza Barnett, and it is the contention of counsel for plaintiffs in error that they introduced sufficient evidence tending to show that there was no marriage to overcome the presumption of legitimacy and place the burden upon the defendant in error.

Cooie Burgess, for plaintiffs in error, testified that:

"I knowed Ben Fife, I reckon, 40 or 45 years ago. I was staying with Dave Hodge at the time that he was courting Miss Hodge, and heard him say that 'I never was married'—that 'I lived with a woman.' "

Joe Johnson was also called as a witness for plaintiffs in error and testified that:

"I was there at the home of Dave Hodge" and "Uncle David got after him about being off with Electra and not married, or anything, or living with some other woman"

—and he said:

"All right, I and Electra is married. It is the only woman I ever married."

These witnesses were decidedly indefinite as to the time and surroundings under which these statements of Ben Fife were alleged to have been made, but fixed the date as "during Isparhecher war," which was approximately 50 years prior to the trial of this case. These witnesses were then boys of only ten or twelve years of age and it seems to us quite improbable that boys of this age could remember accurately for so long a time a statement which to them must have been of little importance at the time. After reading the testimony of these two witnesses, we can find no fault

with the trial court's refusal to accept this testimony as sufficient to overturn the presumption of legitimacy.

There was introduced in evidence census card No. 1457 showing that Timmie Fife obtained his right to tribal enrollment by reason of the 1890 Hichita Town Payroll, and that his father was Ben, Fife, deceased, a member of Concharty Town and his mother was Liza Frank, deceased, a member of Hichita Town. There were a number of other documents introduced in evidence in which the rolls in the Indian office show Timmie Fife a member of the family of Liza Frank, and there is evidence in the record showing that where the father was a member of one town and the mother a member of the other town the children were listed on the rolls as members of the family of the town of the mother.

In Carlisle v. State ex rel. Harris, 178 Okla. 231, 62 P. (2d) 617, in the second paragraph of the syllabus, we said:

"A court is not obliged to accept testimony as true merely because there is no direct testimony contradicting it, where it contains inherent improbabilities or contradictions which alone, or in connection with other circumstances in evidence, justify an inference that the evidence is false."

From the above quotation it is not our intention to brand the evidence of these two witnesses as entirely false, but when we consider the manner in which the testimony was given, the lapse of time and the circumstances surrounding it, we think it entitled to little, if any, weight.

Even if it could be said that the testimony is true, yet we are confronted with the rule laid down in Coleman v. James, 67 Okla. 112, 169 P. 1064, in which we said in the fifth paragraph of the syllabus:

"The admissions of a party * * * are against his interest, and when made under circumstances of deliberation are entitled to great weight. Denials, on the contrary, being declarations in his own interest, are entitled to little weight in opposition thereto."

In Locust v. Caruthers, 23 Okla. 373, 100 P. 520, in the fourth and fifth paragraphs of the syllabus we said:

"In controversies involving heirship and the legitimacy of children, the presumption of law is in favor of legitimacy, and the reason back of this presumption is that the law encourages decency and morality and right living.

"After a long lapse of time, where proof is given that certain persons are the children of a certain man and woman and were so recognized and treated by the parents and other members of the family, legitimacy will be presumed, even though there was no direct evidence of the marriage of the father and mother."

In Cox v. Colbert, 135 Okla. 218, 275 P. 317, in the first paragraph of the syllabus it is said:

"The enrollment record made by the Commission to the Five Civilized Tribes of Indians, under section 21, Act of Congress of June 28, 1898 (30 Stat. 503), is, as to that part thereof which is descriptive of the persons so enrolled, prima facie evidence as to the matters therein shown, such as parentage, etc., and, if the persons so shown thereon to be parents of the allottee are contended not to have been such parents, the burden is on the party asserting the incorrectness of such enrollment record, and the same cannot be overthrown except by clear, cogent, and convincing proof."

In the light of these authorities, our conclusion is that the judgment of the trial court was not against the clear weight of the evidence, and the judgment of that court is affirmed.

OSBORN, C. J., and RILEY, WELCH, CORN, GIBSON, and HURST, JJ., concur. BAYLESS, V. C. J., and DAVISON, J., absent.