HATTABAUGH v. B. H. & W. MINING CO. et al.

No. 34387.    April 24, 1951.
Rehearing Denied May 15, 1951.

*230 P. 2d 923.*

A. L. Commons, Miami, and Lester Hilliard, Picher, for petitioner.

Fenton, Fenton & Thompson, Oklahoma City, and Mac Q. Williamson, Atty. Gen., for respondents.

DAVISON, J. This is an original proceeding in this court by Richman D. Hattabaugh for review of an order of the State Industrial Commission denying him compensation, in a proceeding wherein the respondents were B. H. & W. Mining Company, his employer, and Tri-State Casualty Insurance Company, its insurance carrier. The alleged disability was total blindness in the right eye and 50% loss of vision in the left eye. The parties appear here in the same order as in the Industrial Commission.

On March 29, 1937, while employed by the B. H. & W. Mining Company, petitioner was struck in the right eye by a rock thrown by a mechanical drill. He was knocked down and blood ran from his eye. He was treated, in and out of the hospital, by two doctors. He returned to work some two weeks later, but for several more weeks he wore a patch over his eye. On May 4, 1937, the temporary total disability was compensated for upon Stipulation and Receipt, designated Form 7, which was filed with and approved by the Industrial Commission. Nothing further was done until he filed a claim for compensation on February 9, 1948, which was later amended claiming damage to both eyes as a result of said accidental injury. Hearing was had, and on October 17, 1949, the trial commissioner made an order finding "that the evidence was insufficient to establish that the condition of claimant's right eye is the result of said injury of March 29, 1937."

To review the order denying the award claimant raises the proposition that it was error to sustain a demurrer to the evidence. Claimant admits that the rule of strict procedure in this respect is not properly applicable in compensation cases, but argues that the State Industrial Commission is duty bound to accept as true and conclusive the undisputed evidence of the disability to the eyes.

Claimant testified that he worked two or three years after the accident at the following places: from six months to a year he remained with his then employer; after leaving the employment of B. H. & W. Mining Company, he worked for about two years for the

Davis Big Chief Mining Company and left there and worked three weeks for the Carpenter Mining Company. Thereafter he worked as a janitor at a religious institution and helped a cousin in a feed store. Also, that it had been about four years since he had done any mining and stated that the reason he could not do mining work was because he could not pass the necessary eye examination.

The B. H. & W. Mining Company has ceased to do business according to the admission of all of the parties, and the Tri-State Casualty Insurance Company appears to have been substituted, for the National Mutual Casualty Company, without any order and upon the agreement of the parties, as the interested carrier in this proceeding.

Dr. McMillian testified substantially as follows: He is an eye, ear and nose specialist practicing at Vinita, Oklahoma, and a graduate of the University of Oklahoma. He first saw claimant on March 10, 1948. At that time he found claimant's right eye to be inflamed and started treating his eye with medicine. He made certain tests which disclosed vision technically described as 20/200 in the right eye and 20/80 in the left eye. He next saw claimant on June 28, 1948, and found no change. The last examination was on September 20, 1948, at which time there was no change in the vision of the right eye and the left eye was in a worse condition; that in his opinion claimant's right eye was injured and the injury has been transferred to the left eye; that the condition of the eye is due to the injury of March 29, 1937; that it is permanent and that claimant is industrially blind in his right eye. The concluding questions in chief are:

"Q. Is that condition which you find a permanent condition? A. Yes, it is permanent loss of vision.

"Q. What percentage of loss did he have on your last examination, Doctor? A. 80% in the right eye, and 51.1% in the left eye. The first reading in the

left eye was 41.5. That was a year previous to this one. The right eye has been unchanged.

"Q. Doctor, from a medical standpoint, how do you account based upon the history of the injury to the right eye, how do you account for the loss of vision to the left eye? A. Transfer of the infection from the right eye to the left. The injured eye to the other eye. It is possible."

On cross-examination he testified that he never saw claimant until in March, 1948; that the condition of claimant's eye at the time he first saw him was largely due to discoloration for which he treated him; that from seeing claimant in March it would be hard to say how long the eye had been that bad. The following questions were then propounded to the witness and the following answers given:

"Q. Wouldn't it be just as hard for you to say that this condition was occasioned by the accident eleven years before that? A. It is over a period of ten or eleven years. Yes, it would be. That is right.

"Q. That is correct? A. Yes. What is his age?

"Q. 62, he testified this morning. A. For a man his age, you wouldn't think he would have arcus senilis, have that white line around the cornea. He definitely had it pretty bad back in 1948 when I saw him.

"Q. How long would it take that to come on? A. That can come on for a period of five to ten years.

"Q. Doctor, if that condition had existed, this man would have been aware of trouble in his eyes for a period of four or five years. A. Yes."

The doctor further testified that a man 62 years old does not have normal vision.

Situations, similar to the one in the instant case, have heretofore been before this court. In the case of McDaniel v. Douglas Aircraft Co., Inc., 200 Okla. 221, 192 P. 2d 651, it was likewise asserted that claimant had estab-

lished by undisputed testimony a disability resulting from an accidental injury. In answering the assertion that there had been no positive controverting testimony, the court in sustaining a contrary finding stated that the determination was within the province of the State Industrial Commission as a fact-finding body. Therein the court said:

"Such was the question before the commission. The question of whether claimant's blindness was due to the accident or from other cause was a question of fact for the determination of the commission from the evidence before it."

In Banning v. Peru-Laclede Syndicate, Inc., 179 Okla. 382, 65 P. 2d 976, we considered a somewhat similar case to that at bar. We discussed the effect of sustaining a demurrer to the evidence in a Workmen's Compensation case and stated:

"While the commission could have more properly said that upon review of all of the evidence they had found that the claimant had failed to prove any disability resulting from his accident of May, 1934, we are of the opinion that the meaning and intent of the finding and order clearly results in a determination of the issue of fact from a consideration of all the evidence, although the phraseology indicates the sustaining of a demurrer. We conclude that the commission intended to and did say that claimant had wholly failed in his proof to establish his claim of disability: that they chose to believe the evidence before them which tended to establish the fact that claimant had never sustained any permanent injury as a result of his accident of May 17, 1934, and therefore he was not entitled to an award of compensation. In doing this the commission was acting within its province as judges of the fact and the credibility of the witnesses and the weight which they would give to the sufficiency thereof. As we have said in Standard Roofing & Material Co. v. Mosley, 176 Okla. 517, 56 P. 2d 847: 'The State Industrial Commission is at liberty to refuse to give credence to any portion of the evidence which in its opinion is not entitled to credence, nor is it required to give credence to the greater amount of evidence as against the lesser.' See, also, Hubbard Drilling Co. v. Moore, 158 Okla. 130, 12 P. 2d 897."

Almost eleven years intervened between the time claimant sustained his accidental injury and the consultation with Dr. McMillian. There is no testimony that in all this time claimant consulted any physician other than those incident to the treatment of the original disability within a short period after the accidental injury of March 29, 1937, and detailed above in the analysis of the testimony of the claimant. The employer has ceased to do business and cannot be found. Claimant was so uncertain about the activities of the employer that he professed not to know it had quit business.

Under these facts and circumstances, and considering further that no attempt was made by claimant to communicate with the employer, or make any claim or complaint about an eye condition which he says he had all these years, and considering further the inherent weakness of the testimony of the doctor pointed out above, we hold that the State Industrial Commission was justified in finding from the review of all the evidence that the disability was not the result of an accidental injury.

In Carlisle v. State ex rel. Harris, 178 Okla. 231, 62 P. 2d 617, the second paragraph of the syllabus is as follows:

"A court is not obliged to accept testimony as true merely because there is no direct testimony contradicting it, where it contains inherent improbabilities or contradictions which alone, or in connection with other circumstances in evidence, justify an inference that the evidence is false."

See, also, 23 C. J., page 47, and 32 C. J. S., Evidence, §1038; In re Hanson's Estate, 304 Ill. App. 157, 26 N. E. 2d 175; Howell v. Harper, 86 Kan. 396, 121 P. 362. Where the witness's own statements create an impression of

the improbability of the facts to which he testified, his evidence may be disregarded. Taggart v. Snipes, 174 Okla. 449, 50 P. 2d 640, citing Beatty v. Beatty, 151 Ky. 547, 152 S. W. 540.

The order denying the award is sustained.

LUTTRELL, V.C.J., and CORN, HALLEY, JOHNSON, and O'NEAL, JJ., concur.