Harold L. CHESTER, Petitioner,

v.

OKLAHOMA NATURAL GAS COMPANY, own risk, and The Workers' Compensation Court, Respondents.

No. 53174.

Court of Appeals of Oklahoma, Division No. 2.

Jan. 22, 1980.

Rehearing Denied Feb. 21, 1980.

Certiorari Denied April 7, 1980.

Released for Publication by Order of Court of Appeals April 10, 1980.

John B. Estes, Stipe, Gossett, Stipe, Harper & Estes, Oklahoma City, for petitioner.

Henry W. Nichols, Jr., Oklahoma City, for respondents.

BRIGHTMIRE, Presiding Judge.

This claim was filed in the Workers' Compensation Court on March 8, 1978 by Harold L. Chester against Oklahoma Natural Gas,

his self–insured employer for 19 years, alleging that while on the job January 3, 1978 at 1500 hours he sustained "serious and permanent injury to chest, ribs, back, heart, respiratory system and body as a whole" as a result of "stress, strain and unusual labor." O.N.G. answered admitting all essential facts except Chester's allegation that he sustained a work–related accidental personal injury and his statement that he gave timely notice of any such injury to respondent.

The trial judge conducted a hearing on September 28, 1978, found that claimant did not sustain an accidental injury in the course of his employment on January 3, 1978 and denied his claim. On appeal to the court *en banc* the order was affirmed.

In his petition for review Chester contends the trial court's decision is contrary to the law and evidence.

■ Whether or not the order is contrary to the law depends upon whether the trial judge performed within the bounds of his fact finding authorization. The scope of such authority is discussed in *Bittman v. Boardman Co.*, Okl., 560 P.2d 967 (1977) and *Hattabaugh v. B. H. & W. Mining Co.*, 204 Okl. 464, 230 P.2d 923 (1951). *Hattabaugh* quotes the law of the case promulgated in *Carlisle v. State ex rel. Harris*, 178 Okl. 231, 62 P.2d 617 (1936) which was that a fact finder is not required to accept positive testimony as true merely because it is uncontradicted. It is only where such testimony is unimpeached by other direct or circumstantial evidence, is consistent within itself and is not inherently improbable that it is impermissible for the fact finder to ignore it. *Spillers v. Colby*, Okl., 391 P.2d 895 (1964). This being true it becomes at once obvious that the fate of this appeal hinges on an analysis of both the quantum and quality of the proof.

The only evidence of the alleged accident was the testimony of the claimant himself. He said he was digging out a four inch gate valve in a five foot deep hole on January 3, 1978 when all of a sudden "my heart jumped once [and] I got short of breath and I raised up and got me some air and went back trying to dig again and my heart jumped twice. I got more air and went back trying to dig and my heart jumped three times and that is the last I could remember." Following this Chester said severe pains crossed his chest and shot down his arm, and he apparently lost consciousness. "I came to," he continued, "and the boy that was working with me had me in the truck and the heater was on and I had to get out of the truck when I come to because I couldn't breathe and I got out and set down beside the truck wheel. He helped me out and I sat down on the ground by the truck wheel until I could get so I could remember what I was doing . . . ." After 30 minutes or so Chester's helper filled the hole and drove him back to the plant. There claimant evidently got into his car and drove home. That night he says he had "two spells." He said during each "I broke out in a severe sweat, shortness of breath, with severe chest pains, gasping for air, trying to breathe . . . and I was so sick that night that I couldn't get out of bed . . . ."

The next morning, however, he got up and went to work, told his supervisor he was unable to go back out and do any shoveling, and reminded him that although he had "brought a statement from the doctor *yesterday*" [1] advising that he (Chester) was not able to do the work, "you [his boss] made me go to work anyhow because you said the doctor wasn't running the gas company." Chester then explained to his boss what had happened the previous day. He did not receive a satisfactory response so he later went to higher supervisory personnel with the matter but it is not clear what action they took if any. Chester says the company officials refused his request for medical help so he tried to work. Around 1400 hours he says, "I got so that I couldn't even see. And I went to Dr. Blue's office

---

1. Emphasis added. Later Chester said the report was written by Dr. Blue–an osteopathic general practitioner.

and he was in surgery." He saw Blue the next day and was given some "shots and some medication and told . . . to go home and go to bed or go to the hospital." Later Chester saw a heart specialist, who hospitalized him, ran several tests and released him seven days later. He returned to work and continued on the job until March 16, 1978– eight days after filing this claim–when the company fired him. Since then he has been working on his 50 acre farm although he has to take it easy and ingest nitro pills when pains start across his chest.

This was Chester's testimony. Its credibility was tarnished somewhat, however, by a report prepared by physician Blue January 12, 1978 stating that he had hospitalized Chester December 9, 1977 with an admitting diagnosis of "angina–pre–infarction syndrome." After a series of tests "which failed to demonstrate a significant heart abnormality" Blue released claimant December 17 with a final diagnosis of (1) hypomagnesemia (abnormally low amount of magnesium in the blood); (2) anterior thoracic myositis (sore superficial chest muscle), and (3) costochondritis (sore ribs). The physician said that the patient gave a history of having had an accident two years earlier[2] in which he "injured some muscles in his chest. Since," continued Blue, "I saw him first on 12/9/77, I cannot make a statement concerning any causal effect of such an accident. Presently he should not be required to engage in heavy physical labor until his myositis and costochondritis have resolved." Among other things significant about the report is the fact that Blue does not mention seeing the patient again on January 5 as Chester said he did. And although Blue's letter is dated January 12 Chester thought it was "probably" the letter he said he gave O.N.G. on January 3.

Doing further harm to claimant's case is the fact he offered no report of the heart specialist who he said put him in Baptist Hospital the latter part of January and ran several tests including the performance of an arteriogram. Furthermore, while Chester was allowed to say that the physician, W. B. Thompson, "found that I had busted some blood vessels in my heart that day from strain and I had torn my cartilages and leaders," a general practitioner, Russell F. Allen, whose deposition and report Chester placed in evidence, inconsistently stated that the arteriogram run by Thompson disclosed no coronary disease and that Thompson's diagnosis was that claimant had "some sort of problem with the cartilages in his chest." Allen's opinion was that Chester had at one time or another "sustained some type of injury to his anterior chest wall, which clinically would appear to be a costochondritis . . . intermittent in nature." As a "result of" sore ribs and the "spell" he had on January 3, 1978 while "dipping up gas leaks with a hand shovel," Allen opined Chester had a "cardiac type of neurosis." By that phrase Allen said he meant that Chester was overreacting to the lack of evidence that his heart is abnormal and that is what is incapacitating him.

 With the evidence in this state it is not possible for us to conclude that the fact finder was required to find Chester sustained an accidental injury on January 3, 1978 as he says he did. As a matter of fact, we have examined the record rather carefully and it is not at all clear to us just exactly what Chester contends happened that would constitute an accidental injury. Presumably it is that he suffered heart damage as the result of a strain. Of such an injury, however, there is no evidence. Moreover, characterization of Chester's condition as a type of cardiac neurosis weakens rather than strengthens his claim that it was produced by an accident occurring on January 3 because by definition a cardiac neurosis is a neurocirculatory asthenia, that is, a loss of strength resulting from anxiety of psychic origin. What Allen really had in mind probably was an accident neurosis–a psychoneurosis caused by an accident. If so it is rather apparent that the symptomatic

---

**2.** Chester said the physician was in error in that the reported accident was only a year earlier–in January 1977.

foundation for such a diagnosis is extremely weak[3] and what basis there is antedates the alleged injury–January 3, 1978–by at least a year according to the Blue report. Under these circumstances the trial court's finding was appropriate.

The order appealed is therefore affirmed.

BACON and NEPTUNE, JJ., concur.

---

3. An accident neurosis is commonly character-ized by various hysterical symptoms which do not seem to be present in Chester's case ex-cept, perhaps, in a very mild form.