Ruth Ann LeVan ALLGOOD, Appellant,

v.

Richard J. ALLGOOD, Appellee.

No. 53024.

Supreme Court of Oklahoma.

Feb. 24, 1981.

Rehearing Denied May 4, 1981.

Warren H. Crane, Lawton, for appellant.

C. E. Wade, Jr., Wade & Kinslow, Lawton, for appellee.

DOOLIN, Justice:

The situation is not new: an alimony-receiving ex-wife living with her boyfriend. But the question presented is unique to this Court and undoubtedly has been pondered by alimony-paying ex-husbands since time immemorial. The question: should alimony for support be ended when an ex-spouse (wife in this case) cohabits with another man on a permanent basis, but chooses not to marry him? Is such a living arrangement an affront to public policy, or a fraud on the court, to demand retribution by terminating the alimony? We say not.

The Allgoods were divorced in Lawton in 1975, with the defendant agreeing to alimony payments of $3,500.00 per month for 24 months, $2,500.00 per month for 12 months and $1,500.00 per month for 84 months. Plaintiff moved to Dallas, purchased a house and began work at a travel agency for $685.00 per month. A year later she met her paramour and he moved in with her. Sometime later they purchased a condominium as joint tenants with right of survivorship, she paying cash for half the purchase price and he agreeing to make the monthly mortgage payments for the other half. They share living expenses but maintain separate bank accounts and make it known they are not married. They both admit they view the arrangement as permanent. They say they have no desire to marry because of bad first marriages; that this decision has nothing to do with the termination of alimony if they do marry. Plaintiff's financial statement, submitted upon purchase of the condo, admits assets in excess of $100,000.00. They have made a point to avoid a common-law marriage situation.

Defendant submits the living arrangement of his former spouse and her paramour is a marriage in every aspect except the ceremony sanctifying it, and is thus a fraud on the court (which by its decree of divorce provided for termination of alimony only upon the death or remarriage of plaintiff);

defendant further contends wife's action is violative of the state's public policy by condoning sex outside of marriage.

Plaintiff argues only a remarriage (or death) can end the alimony, that fornication is not against Oklahoma law[1] and if the defendant had wanted to insist on the post-marriage chastity of the plaintiff as a condition of alimony, he might have argued that point during the divorce negotiations.

There is some slight case law precedent within Oklahoma for the defendant's position.

As far as we can ascertain, this Court has addressed the issue once before, and that in 1908, in the case of *Stanfield v. Stanfield,* 22 Okl. 574, 98 P. 334 (1908).[2] In *Stanfield* the defendant husband agreed to pay his plaintiff wife $150.00 per month alimony on condition she remain single and unmarried. He later said it was his understanding that his ex-wife planned to marry within six months following the divorce and based upon that "understanding" he sought to terminate the alimony. The Court said:

> "In the absence of a showing of a change in the financial condition of the party charged, or the remarriage, or some other similar and controlling circumstances occurring in the life of the party benefited, the decree allowing alimony ought not to be rescinded or annulled. After the divorce the parties go into the world as strangers to each other, and generally even the *adultery of the wife,* except possible under special conditions not involved in this case, will not relieve the husband of the payment of alimony in accordance with the decree." 98 P. at 340. (Emphasis added)

The case before us, however, shows neither remarriage, death of the recipient of the alimony, nor a change in financial conditions. The latter element is of dubious value based on the precise wording of our pre-1979 statute and the divorce decree.

Alimony awards were once considered final judgments in Oklahoma which continued regardless of the future marital positions of the former spouses. *Gilcrease v. Gilcrease,* 186 Okl. 451, 98 P.2d 906, 127 A.L.R. 735 (1940). The 1965 State Legislature added Section 1289 to Title 12 to allow the trial court in its discretion to provide for the termination of alimony in cases of death or remarriage. The statute was amended two years later to permit the remarried spouse 90 days in which to show the court that her continued needs warranted the continuation of the alimony payments. See dissent by Hodges, V.C.J., *Stuart v. Stuart,* 555 P.2d 611 (Okl.1976).

We note in passing only the 1979 Oklahoma Legislature amended 12 O.S. § 1289 to permit the termination of alimony when the payee (former spouse) cohabits with a member of the opposite sex, based on a change in the need for alimony support. Cohabitation is defined as dwelling together as man and wife in a private conjugal relationship which does not meet the standards of either a common-law marriage or a legally solemnized marriage. That change took effect October 1, 1979, and has no effect on this case.

Several states support the former husband's position through case law. Perhaps foremost is *Garlinger v. Garlinger,* 137 N.J. Super. 56, 347 A.2d 799 (1975), wherein the New Jersey Court ruled that unchastity of the former wife is a *factor* in the termination or reduction of alimony, but is not misconduct per se. "If it is being shown that the wife is being supported in whole or in part by the paramour, the former husband may come into court for a determina-

---

**1.** *Rachel v. State,* 71 Okl.Cr. 33, 107 P.2d 813 (1940).

**2.** *Stanfield* cites as authority *Cole v. Cole,* 142 Ill. 19, 31 N.E. 109 (1892). *Cole* contains an excellent history of alimony from old England through our own common law and into statuto-

ry law. In *Cole,* termination of alimony was rejected because of lack of clarity as to whether the alimony was for personal support of the ex-wife or a division of jointly acquired property.

tion of whether the alimony should be terminated or reduced," based on her changed circumstances: her need for continued support alimony. The same determination may be demanded even if the paramour contributes nothing to his own support, so that the wife's alimony is supporting the paramour. The court in *Garlinger* suspended alimony for only those months when the paramour lived with the former spouse.

The distinctions between *Garlinger* and our case come when viewing the distinctions between the divorce statutes of New Jersey and Oklahoma. New Jersey permits modification of support alimony at any time based on a change of circumstances (N.J. S.A. 2A:34–23); Oklahoma permitted modification of support alimony (prior to 1979 amendment) only upon remarriage or death of the spouse, and even in the case of remarriage the alimony may continue if the remarried spouse can successfully argue continued need. 12 O.S.1971 § 1289.

Kansas met the question head-on in *Fleming v. Fleming*, 221 Kan. 290, 559 P.2d 329 (1977), wherein the former husband sought to terminate alimony payments because his ex-wife had been living for some years with her boyfriend. The divorce decree said alimony would terminate only upon death or remarriage. He alleged violation of public policy and a common-law marriage. The Kansas Court said he failed to prove the elements of a common-law marriage and found specifically that the public policy of Kansas was not violated by the arrangement: "Alimony is based on the obligation to support an ex-wife and is not to be measured in the future by her chastity or moral conduct."

The Kansas Court also disagreed with the petitioner's contention that his ex-wife enjoyed all the benefits of marriage in her new relationship without jeopardizing alimony payments: "It should first be suggested the appellee [wife] did not receive all of the benefits of marriage in her relationship with her boyfriend because the very necessary element of support was lacking.

There was no evidence of support nor was there evidence of a present agreement between the parties to be married, which would have constituted a common-law marriage and an implied legal obligation to support." *Fleming v. Fleming*, 221 Kan. 290, 559 P.2d 329, 331 (1977).

■ Likewise in our case there is no evidence of promised support from the paramour. Mrs. Allgood's boyfriend could, as she admitted, leave their condominium at any time with only legal strings to make the payments on the condo to attach him to her. He is under no obligation to support her. In Oklahoma, a husband has the legal duty to support his wife and that can continue after divorce in the form of support alimony, 32 O.S.1971 § 3. A paramour has no such obligation. For a more detailed analysis of the situation see 24 Am.Jur.2d, Divorce and Separation, section 685, 6 A.L. R.2d 862.

Can the word "remarriage" be interpreted so as to encompass Mrs. Allgood's relationship with her paramour? The defendant would argue it could, but we must disagree.

Oklahoma law is quite specific on the elements of a "marriage:" "Marriage is a personal relation *arising out of a civil contract* to which the consent of the parties legally competent of contracting and of entering into is necessary, and the marriage relation shall only be entered into, maintained or abrogated as provided by law." 43 O.S.1971 § 1. (Emphasis added).

Here we have no "civil contract," nor any implied contract which might lead to finding a common-law marriage. In fact, we have evidence of specific disaffirmance of any intention to be married, past, present or future. In brief, there is no "remarriage" here.

It can, perhaps, be argued that the Oklahoma law is or was flawed. Regardless, it is our law and will remain so until changed by the Legislature. This Court is without power to alter a statute so specific in word-

ing that it is simply not open to other interpretation. While we have not passed on the 1979 amendment to the law, such amendment may meet the predominant objections, for it permits alimony reduction in cases of cohabitation with a member of the opposite sex when a change in need is proved. It does not, however, respond to those situations wherein the former spouse receives aid from someone outside of a "conjugal" relationship (e. g. parents, brother who resides with her, etc.).

It is the duty of courts to give effect to legislative acts, not to amend, repeal or circumvent them. *Champlin Refining Co. v. Oklahoma Tax Commission*, 25 F.Supp. 218 (W.D.Okl.1938). A court is not justified in ignoring the plain words of a statute. *Twaits v. State Board of Equalization*, 93 Cal.App.2d 796, 210 P.2d 40 (1949); *Schroder v. Kansas State Highway Commission*, 199 Kan. 175, 428 P.2d 814 (1967).

REVERSED.

LAVENDER, C. J., IRWIN, V. C. J., and SIMMS and HARGRAVE, JJ., concur.

WILLIAMS, HODGES, BARNES and OPALA, JJ., dissent.