Donald L. COX, Petitioner,

v.

**B.F. GOODRICH COMPANY, Own Risk, and the Workers' Compensation Court, Respondents.**

**No. 70419.**

Court of Appeals of Oklahoma,
Division No. 4.

June 27, 1989.

Rehearing Denied Aug. 1, 1989.

Richard A. Bell, Norman, for petitioner.

W. Neil Wilson, Wallace, Owens, Landers, Gee, Morrow, Wilson, Watson, James & Coiner, Miami, for respondents.

BRIGHTMIRE, Vice Chief Judge.

The sole issue presented for review is whether the trial court's workers' compensation award of 10 percent permanent partial disability to the body as a whole due to injury to the claimant's lungs is supported by competent evidence. We hold that it is.

**I**

The operative facts are that the claimant, Donald Cox, was found by the workers' compensation trial court to have sustained a job-related lung injury during his 36 years of employment with the respondent, B.F. Goodrich, and as a result had 10 percent permanent partial disability to the whole body. The order was affirmed by the court en banc.

The petitioning claimant contends that the evidence required the court to fix the impairment between the amount established by his medical evidence—35 percent—and the highest amount testified to by one of the respondent's medical witnesses, namely, 40 to 60 percent.

**II**

While we are at a loss to understand how the court en banc could weigh the evidence, as it was required to do, and still conclude that the 10 percent award was not clearly against its weight, we are, of course, in this original review proceeding, restricted

to the *Parks*[1] standard of review, viz., to determine whether any competent evidence supports the lower court's findings of fact.

The claimant recognizes this and consequently argues that the respondent's medical evidence is incompetent because it is contradictory, self-impeaching and inconsistent. For support he relies on a principle applied in *Chester v. Oklahoma Natural Gas Co.*, 619 P.2d 1266 (Okl.App.1980), namely, that a fact finder may not ignore uncontradicted testimony that is unimpeached, consistent within itself, and not inherently improbable.

■ The *Chester* concept, however, is inapposite here because we are concerned not with testimonial consistency but with its admissibility and believability. And so the question under these circumstances is whether the evidence was admissible and if so whether the fact finder was obliged to ignore all of the inconsistent partisan testimony.

■ This question, of course, must be answered in the negative. Testimony of a party that is contradictory, impeached, inconsistent or improbable may indeed be ignored by a fact finder, but it is not for that reason rendered incompetent. It is the weight rather than the competency of subject evidence that is at issue here. For, as pointed out in *Black's Law Dictionary* 257 (5th ed. 1979), competency of evidence differs from its credibility in that, generally speaking, competent evidence is that which is "admissible (i.e. relevant and material)," while credibility has to do with the believability of admissible evidence. Thus in this case the range of admissible disability evidence presented to the trial court was from the respondent's 10 percent to the claimant's 35 percent permanent partial impairment of the whole body. Being admissible the respondent's evidence was competent. It thus became the duty of the trial court to appraise the credibility of all the medical reports and the doctor's depositions as well as the live testimony of the claimant and make findings of fact. The

trial court found that claimant had sustained only a 10 percent impairment and made an award in accordance with the finding. An appeal was made to the court en banc with regard to the 10 percent finding. Its duty was to weigh the evidence and determine whether or not the 10 percent finding was clearly against the weight of the evidence. Its order recites that it found that it was not and affirms the award.

Since competent evidence underlies the assailed impairment finding, we are constrained to sustain the award.

BACON and RAPP, JJ., concur.

## SUPPLEMENTAL OPINION ON REHEARING

The petitioner has filed a Petition for Rehearing requesting "a rehearing" for the following reasons:

"Petitioner would request that this Court publish its Opinion of June 27, 1989. Petitioner would point out to this Court that attorneys for Respondent have in the past at Court accused Petitioner's attorney of 'doctor shopping' in preparation for Trial. It would appear also that Respondent's attorneys also engage in ... doctor shopping in preparation for Trial."

What the petitioning claimant is referring to are the following facts:

The employer tested the claimant's lung function at the plant in April 1986. The resulting values—according to the later deposition of the employer's selected expert, Robert M. Mahaffey, M.D., of Independent Medical Evaluations of Oklahoma, Inc.—placed the claimant's impairment in a *Guides*[1] Class III category which has an impairment range of between 30 and 45 percent to the whole body.

After the Goodrich plant tests, the employer sent the claimant to a Roy L. DeHart, M.D., who, on August 15, 1986, examined the claimant at the doctor's Independent Medical Evaluations offices. He

---

**1.** *Parks v. Norman Municipal Hospital,* 684 P.2d 548 (Okl.1984).

**1.** A.M.A. *Guides to the Evaluation of Permanent Impairment* (2d ed. 1984).

noted that the claimant's "cooperation throughout all tests was excellent," came up with pulmonary function results which he said placed the claimant in a *Guides* Class II category and gave him a 20 percent impairment rating.

Evidently not satisfied with Dr. DeHart's evaluation, the employer had the claimant go back to Independent Medical Evaluations on December 5, 1986, to be seen by Dr. Mahaffey. The physician went over everything again, ran some more pulmonary function tests, and issued a report in which—after a "discussion" of certain "studies" of the harmful effects of the various air pollutants inhaled by the claimant at the Goodrich plant throughout the years—he concluded that the claimant had sustained only a "10.0% Permanent Partial Impairment to the whole body."

It was this report that the employer attached to a Form 10 filed January 26, 1987, and it, in spite of all the other evidence of greater impairment, became the basis for the challenged 10 percent award.

While the circumstances may indeed invite use of the term "doctor shopping," neither such assessment of the employer's strategy nor the request that our opinion be published furnishes a premise for granting a rehearing.

We will, however, treat the petitioner's petition as a motion to publish this opinion and sustain it.

Therefore, the petition for rehearing is denied. The original opinion filed June 27, 1989, and this supplemental opinion are released for publication.

BACON, J., concurs, and RAPP, J., not participating.