2008 OK 34

Millard **SMALYGO**, Jr., d/b/a Smalygo Homes, Petitioner,

v.

David T. **GREEN** and The Workers' Compensation Court, Respondents.

No. 102,950.

Supreme Court of Oklahoma.

April 15, 2008.

Aaron C. Peterson of Tulsa, Oklahoma, for Petitioner.

Bret A. Unterschuetz of Tulsa, Oklahoma, for Respondents.

COLBERT, J.

¶ 1 This matter presents this Court's first application of the "good faith reliance" exception to the long-standing rule of principal employer liability stated in section 11(B)(2) of the Workers' Compensation Act. Okla. Stat. tit. 85, §§ 1 through 211 (2001 & Supp.2007). The issue is whether competent evidence was presented to support the determination by a three-judge panel of the Workers' Compensation Court that a principal employer's reliance on proof of workers' compensation insurance did not meet the statutorily imposed standard of "good faith" necessary to exempt the principal employer from secondary liability in workers' compensation. This Court finds that there is competent evidence in the record to support that determination.

## FACTS AND PROCEDURAL HISTORY

¶ 2 David Green (Claimant) suffered a work-related injury on October 10, 2002, while working as a construction laborer for Mark Murphy d/b/a Mark Murphy Construction, an independent contractor and subcontractor of the principal employer Millard Smalygo d/b/a Smalygo Homes. When Claimant learned that his immediate employer had no workers' compensation coverage, he amended his claim to add Smalygo as principal employer.

¶ 3 Smalygo contracted Murphy to perform construction work and requested proof of workers' compensation coverage. Al-

though it is undisputed that Murphy provided written proof of valid current coverage, the content of that proof is unclear because apparently neither party retained the original or a copy. However Claimant's Exhibit #3 is a document from Compsource Oklahoma, which reflects that insurance coverage was in effect from August 13, 2001, until April 1, 2002. This document was generated on May 20, 2004, apparently at the request of Claimant's lawyer in anticipation of trial. While the exhibit is evidence of the date coverage began, it does not identify the original expiration date of coverage listed on the proof of insurance Murphy provided to Smalygo.[1] That is because on April 1, 2002, the insurance coverage lapsed, apparently due to Murphy's failure to pay his premium. Murphy admitted that he did not notify Smalygo of the termination of insurance coverage. Murphy testified that he was unsure whether the original term of the policy had been for six months or one year. Smalygo testified that coverage was in effect when he was presented with proof of insurance at the time he contracted with Murphy sometime between March and August of 2002. Therefore, for coverage to have been in effect during that time, the testimony indicates that the policy term stated on the proof of insurance shown to Smalygo was for one year with an expiration date of August 13, 2002.[2]

¶ 4 The trial court initially determined that Claimant was himself an independent contractor for Murphy and dismissed the claim with prejudice for lack of jurisdiction in August of 2004. A three-judge panel vacated that dismissal, found that Claimant was an employee of Murphy, and remanded the matter for a determination of the remaining issues.

¶ 5 On remand, Smalygo argued that he was insulated from secondary liability based upon his compliance with section 11(B)(2) which provides that "if a principal employer relies in good faith on proof of a valid workers' compensation insurance policy issued to an independent contractor of the employer or to a subcontractor of the independent contractor ... then the principal employer shall not be liable for injuries of any employees of the independent contractor or subcontractor." Okla. Stat. tit. 85 (Supp.2007). Smalygo testified that he had known Murphy for "quite a few years," he relied upon the fact that Murphy had given proof of coverage to him, and he trusted Murphy to maintain that coverage.

¶ 6 In its July 2005 order on remand, the trial court determined that Claimant was an employee of Murphy at the time of his injury. It also determined that Smalygo was not secondarily liable because he had required proof of workers' compensation coverage before he allowed Murphy to perform work as a subcontractor and he did not know that Murphy had allowed that coverage to lapse. Smalygo was again dismissed from the matter with prejudice.

¶ 7 A three-judge panel sustained in part and modified in part. It sustained the determination that Claimant was an employee of Murphy. However, the divided panel expressly vacated the trial court's determination that Smalygo was not secondarily liable.

¶ 8 The issue of Claimant's status as Murphy's employee was not raised in this appeal and the Court of Civil Appeals sustained the three-judge panel's determination that Smalygo was secondarily liable. Thus, this matter presents the sole issue of Smalygo's secondary liability as principal employer.

## ANALYSIS

■ ¶ 9 The Workers' Compensation Act is designed to encourage employers to secure compensation so that injured workers will be compensated for "loss of earning power and

---

1. At the hearing before the trial court, Murphy's attorney objected to the admission of Claimant's Exhibit # 3 on the basis of relevance. Smalygo's attorney joined in the objection. The trial court overruled the objection with the following explanation: "Well, just on the face of it, I can tell you that it doesn't purport to suggest that it was given to Mr. Smalygo. It simply indicates there was coverage in place from 8/13/01 to 4/1/02."

2. A six-month expiration date of February 13, 2002, cannot be reconciled with Smalygo's testimony that the proof of insurance indicated that coverage was in force at the time Smalygo examined the document sometime between March and August of 2002.

disability to work." *Strong v. Laubach,* 2004 OK 21, ¶ 10, 89 P.3d 1066, 1070. In order to prevent evasion of compensation coverage by the subcontracting of the employer's normal work, most states impose the compensation liability of an uninsured subcontractor onto the general contractor. "The purpose of this legislation [is] to protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on the presumably responsible principal contractor, which has it within its power, in choosing subcontractors, to pass upon their responsibility and insist upon appropriate compensation protection for their workers." 4 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 70.04 (Math.Bend.2004)(footnotes omitted). These statutes aim to "forestall evasion of the [workers' compensation] act by those who might be tempted to subdivide their regular operations among subcontractors, thus escaping direct employment relations with the workers and relegating them for compensation protection to small contractors who fail to carry (and, if small enough, may not even be required to carry) compensation insurance." *Id.* § 70.05.

¶ 10 Oklahoma is one of forty-three states that have enacted such a provision. *Id.*

§ 70.01. Since 1923, section 11 of Oklahoma's Workers' Compensation Act has allowed an injured employee of an uninsured independent contractor to pursue a workers' compensation claim against the general contractor, or an intermediate contractor, without regard to the liability of the independent contractor. The injured worker may proceed up the chain of independent contractors to reach an intermediate or a general contractor which maintains compensation coverage through insurance or through one of the other means enumerated in section 61 of the Act for securing compensation. Section 11 refers to that entity as a "principal employer."

■ ¶ 11 In 1993, Oklahoma became apparently the first state, and to date the only state, to enact an exception to the general rule of principal employer secondary liability. Section 11(B)(2) permits a principal employer to avoid liability if it "relies in good faith" on proof of workers' compensation insurance by an independent contractor or its subcontractor.[3] Thus, the text of the exception requires both "reliance" on the proof of insurance and "good faith" in doing so. Mere reliance will

---

3. Section 11(B) provides:

B. Liability of any person, firm, or corporation having an interest in the subject matter, employers and contracting employers, general or intermediate, for compensation under the Workers' Compensation Act, when other than the immediate employer of the injured employee, shall be as follows:

. . . .

2. The person entitled to such compensation shall have the right to recover the same directly from the person's immediate employer, the independent contractor or intermediate contractor, and such claims may be presented against all such persons in one proceeding. If it appears in such proceeding that the principal employer has failed to require a compliance with the Workers' Compensation Act of this state, by the independent contractor, then such employee may proceed against such principal employer without regard to liability of any independent, intermediate or other contractor; provided, however, if a principal employer relies in good faith on proof of a valid workers' compensation insurance policy issued to an independent contractor of the employer or to a subcontractor of the independent contractor or on proof of an Affidavit of Exempt Status Under the Workers' Compensation Act

properly executed by the independent contractor or subcontractor under Section 75 of this act, then the principal employer shall not be liable for injuries of any employees of the independent contractor or subcontractor. Provided further, such principal employer shall not be liable for injuries of any independent contractor of the employer or of any subcontractor of the independent contractor unless an employer-employee relationship is found to exist by the Workers' Compensation Court despite the execution of an Affidavit of Exempt Status Under the Workers' Compensation Act. Provided, however, in any proceeding where compensation is awarded against the principal employer under the provisions hereof, such award shall not preclude the principal employer from recovering the same, and all expense in connection with said proceeding from any independent contractor, intermediate contractor or subcontractor whose duty it was to provide security for the payment of such compensation, and such recovery may be had by supplemental proceedings in the cause before the Court or by an independent action in any court of competent jurisdiction to enforce liability of contracts.

. . . .

Okla. Stat. tit. 85 (Supp.2007).

not satisfy the exception.[4]

¶ 12 By requiring good faith, the Legislature did not create an ambiguity nor did it render the provision vague. Rather, it employed a well-known legal concept that applies to a variety of situations and transactions. For example, the Uniform Commercial Code defines "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing." It applies the definition to each article of that code. Okla. Stat. tit. 12A, § 1–201(20) (Supp.2007). Similarly, the concept of subjective honesty combined with objective reasonableness is found in an insurer's "implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received." *Christian v. Am. Home Assurance Co.*, 1977 OK 141, ¶ 8, 577 P.2d 899, 901. These are just two examples. Definitions, descriptions, and applications of the good faith standard can be found in both statutory and common law in the areas of commercial law, as well as tort, property, criminal, and other areas of law. In each of these areas due diligence is the hallmark of good faith.

¶ 13 "Good faith is generally regarded as requiring the exercise of reasonable diligence to learn the truth, and . . . [h]e who claims . . . that he has been misled through the conduct of another must not have been misled through his own want of reasonable care." *Hillers v. Local Fed. Sav. & Loan Ass'n*, 1951 OK 57, ¶ 14, 232 P.2d 626, 630. While "[g]ood faith is the opposite or antithesis of bad faith," *Goodwin v. Old Republic Ins. Co.*, 1992 OK 34, ¶ 11 n. 12, 828 P.2d 431, 434 n. 12, it does not follow that good faith is merely the lack of bad faith. One may act in a manner that does not demonstrate bad faith yet that conduct may

fall short of the reasonable diligence required of "good faith."

¶ 14 "The question of good faith depends upon the mental attitude of the person whose motives are in question and in common with other questions of that character usually presents a question of fact." *Orr v. Mallon*, 1942 OK 204, ¶ 11, 126 P.2d 83, 85 (citation omitted). It is to be "determined from the facts and circumstances surrounding the transaction, as well as (or independent of) the declarations of the party." *Id.*

¶ 15 Stare decisis obligates this Court to review factual determinations in workers' compensation by the "any competent evidence" standard enunciated in *Parks v. Norman Municipal Hospital*, 1984 OK 53, ¶ 12, 684 P.2d 548, 549–52. "Competent evidence is that which is relevant and material to the issue to be determined." *Joseph A. Coy Co. v. Younger*, 1943 OK 160, ¶ 5, 136 P.2d 890, 891–92. Evidence remains "competent" under this definition even though it may be conflicting, contradictory, or lack a degree of credibility. *Id.* ¶ 5, 136 P.2d at 892; *Cox v. B.F. Goodrich Co.*, 1989 OK CIV APP 41, ¶ 7, 788 P.2d 967, 968. Thus, the task in this matter is to canvass the record to determine whether there is relevant and material evidence to support the three-judge panel's determination that the principal employer failed to act in good faith in his reliance on the proof of insurance.

¶ 16 The record demonstrates that there was a question concerning whether the proof of insurance shown to Smalygo indicated an expiration date of six months from when the policy issued (February 13, 2002) or one year (August 13, 2002). There was no dispute, however, that Murphy allowed the coverage to lapse on April 1, 2002, without informing Smalygo.[5] There is also no dispute that

---

4. Smalygo urges that his obligation of "good faith reliance" was satisfied when he accepted proof of Murphy's valid and current workers' compensation coverage at the time Murphy began to perform work for him. Smalygo's proffered construction of the statutory exception would effectively remove the "good faith" requirement from the text of the statute leaving only the requirement of "reliance." Even if this Court were inclined to adopt Smalygo's construction of the exception, this Court is not free to do so. "It is the duty of courts to give effect to

legislative acts, not to amend, repeal or circumvent them. A court is not justified in ignoring the plain words of a statute." *Allgood v. Allgood*, 1981 OK 21, ¶ 19, 626 P.2d 1323, 1327 (citations omitted).

5. The fact that there was actually a policy issued in this matter distinguishes it from *Myers v. Wescon Construction, Inc.*, 2002 OK CIV APP 116, 59 P.3d 1277, which appears to be the only published appellate decision to have applied the "good faith reliance" exception to the secondary liabili-

Claimant was injured on October 10, 2002. Thus, the injury occurred almost two months after the latest possible expiration date listed on the proof of insurance which Murphy showed Smalygo.

¶ 17 Faced with these facts, the three-judge panel determined that "the duty of good faith statutorily imposed on the contractor extends beyond a mere one time determination that the subcontractor is covered when the proof of coverage is first examined by the contractor." The panel concluded that "at a minimum" Smalygo was obligated "to again require proof of coverage on the anniversary date of the policy." It noted that if Smalygo had done so he would have learned on August 13, 2002, nearly two months before Claimant's injury, that Murphy was uninsured.

¶ 18 The three-judge panel was presented with competent evidence from which it could conclude that Smalygo, as principal employer, had not exercised reasonable diligence and therefore had not met the statutory standard of good faith. Under the facts and circumstances of this matter, the exercise of reasonable diligence would have, at a minimum, required Smalygo to obtain a current certificate of insurance from Murphy's insurer to demonstrate proof of current coverage. Good faith is not demonstrated when a principal employer accepts proof of his subcontractor's workers' compensation coverage but remains indifferent to the stated expiration date of that coverage.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF COURT OF CIVIL APPEALS VACATED; ORDER OF THREE–JUDGE PANEL OF WORKERS' COMPENSATION COURT SUSTAINED.

EDMONDSON, V.C.J., HARGRAVE, OPALA, KAUGER, WATT, TAYLOR, and COLBERT, JJ., CONCUR.

WINCHESTER, C.J., dissents.

REIF, J., disqualified.

WINCHESTER, C.J., dissenting.

¶ 1 In this case, there is no evidence of bad faith or any act supporting a finding that Smalygo's reliance on the proof of coverage was not in good faith.[1] While perhaps it would have been good business judgment for Smalygo to repeat his request for proof of coverage after a certain period of time during the subcontractor's performance of work, what the law requires in this instance and what might constitute good business judgment are distinct. In regard to the term "good faith" this Court has in the past observed, "Acting in good faith and using poor business judgment are not mutually exclusive." *Martin v. Johnson*, 1998 OK 127, ¶ 33, 975 P.2d 889, 897. The plain language of the statute is particularly instructive here, as the statutory term "rely" is defined as "to place or have faith or confidence," and its synonyms include "depend," and "trust."[2] In this case, Smalygo testified he trusted his subcontractor, Murphy. The express terms of the statute authorize principal employers to place trust upon proof of valid insurance coverage and enjoy insulation from liability if such trust is placed in good faith. Since the record reveals no set of facts that might otherwise lead to a finding that Smalygo's reliance upon the subcontractor's proof of coverage was in any way unjustified, unreasonable or in bad faith, Smalygo complied with the statute in his request for and reliance upon proof of coverage, which the subcontractor unfortunately failed to maintain. The subcontractor's failure does not equate to bad faith on the part of Smalygo.

ty of a principal employer. There, the workers' compensation insurer issued a certificate of insurance to a subcontractor on which both the subcontractor and the principal contractor relied in good faith. The principal employer escaped secondary liability based on the reliance in good faith on the proof, albeit erroneous, of the subcontractor's workers' compensation insurance. That result is entirely consistent with today's decision because no amount of reasonable diligence by the principal employer in *Myers* would

have informed the principal employer of the insurer's mistake.

1. I have previously expressed my views on this Court's construction of "bad faith" in *Badillo v. Mid Century Ins. Co.*, 2005 OK 48, ¶ 11, 121 P.3d 1080, 1113 (Winchester, V.C.J., dissenting).

2. *The American Heritage Dictionary of the English Language* 1475 (4th ed.2000).

¶ 2 The majority notes these facts: that the subcontractor provided written proof of valid current coverage, that no document was submitted to the court as evidence of when the subcontractor's original contract was to expire, only a document showing when it actually expired. The Court's opinion further observes that the subcontractor did not notify Smalygo of the termination of the insurance coverage and was even unsure of the term of his policy. The Court includes the fact that Smalygo testified that he had known the subcontractor for "quite a few years," and he relied upon the fact that the subcontractor had given proof of coverage to him, and he *trusted* him to maintain that coverage. After reviewing this evidence in its opinion, the Court sets a standard that "the concept of subjective honesty combined with objective reasonableness is found in an insurer's 'implied-in-law duty' to act in good faith and deal fairly with the insured to ensure that the policy benefits are received." *See, Christian v. Am. Home Assurance Co.*, 1977 OK 141, ¶ 8, 577 P.2d 899, 901. Focusing on the portion of the test involving "subjective honesty combined with objective reasonableness," the evidence reveals no objective evidence of *subjective dishonesty* and so I would conclude there is no violation of the duty to act in good faith and deal fairly with the insured.

¶ 3 The critical undisputed facts here are that proof of current and valid insurance coverage was provided to Smalygo prior to commencement of work and based on that proof and his prior dealings with the subcontractor, he relied on that proof of coverage. In doing so he complied in all respects with the express statutory procedure. If the legislature had intended to establish a mandate that principal employers continually supervise and monitor their subcontractors' insurance coverage and payment of insurance premiums and/or periodically re-confirm coverage in order to enjoy immunity from suit, the statute would have been drafted in such a way to provide such directive.