1998 OK 127

**Nancy MARTIN, Appellant,**

v.

**Bill JOHNSON, Donald Hoover, and Independent School District No. 24, Appellees.**

No. 87,994.

Supreme Court of Oklahoma.

Dec. 22, 1998.

Nancy A. Martin, Eufaula, Oklahoma, pro se, and Brian Self, Ada, Oklahoma, for appellant, Nancy A. Martin.

Timothy M. Melton, The Center for Education Law, Inc., Oklahoma City, Oklahoma, for appellees, Bill Johnson, Donald Hoover, and Independent School District No. 24.

1. Plaintiff Martin is also an attorney licensed to practice law in Oklahoma.

SUMMERS, V.C.J.

¶1 Plaintiff's contract as a non-tenured Spanish teacher in the Latta school system was not renewed. She sued in the District Court, first naming the Principal Johnson as defendant, and then added Superintendent Hoover and the School District. Before her case made it to trial Plaintiff was assessed a sanction by way of attorneys fees for attempting to amend her petition, and then suffered the ultimate sanction of having her case dismissed for failure to attend a continuation session of her own deposition of which she had been given notice. Additional fees and costs accompanied the second sanction. She appealed. We reverse the sanctions, reinstate her petition, and remand.

¶2 Nancy Martin's[1] allegations were that her resistance to Johnson's sexual advances were at the heart of her non-renewal. She alleged a conspiracy, which, she claimed, included the Superintendent, and in addition to claims of sexual harassment pled theories of intentional infliction of emotional distress and tortious interference with her employment contract. She also pled breach of contract against the School District for the procedure by which she was non-renewed or terminated.

¶3 In March of 1996, Defendants jointly moved to dismiss, with prejudice, Martin's claim as it related to allegations of tortious interference with contract. The motion was apparently based upon 12 O.S.1991 § 2012(B)(6), failure to state a claim upon which relief may be granted. Defendants argued that the amended petition would not state a claim because Johnson and Hoover were agents of the School District, and could not thus interfere with Martin's contract with the District. Martin argued that her theory was viable if the agent was an employee acting outside the scope of his or her employment, or acting to serve his or her own interests as opposed to the best interest of the employer. On April 22, 1996 the trial court heard the argument on this motion as well as a separate motion by Defendants for a partial summary judgment involving other claims.[2] The trial court granted the motion to dismiss.

2. The trial court granted summary judgment involving claims relating to a conspiracy theory,

¶ 4   On May 1, 1996 Martin filed a motion seeking permission to allow her to file an amended petition. Defendants then filed a motion to settle the journal entry. A hearing was held on July 1, 1996 to settle the journal entry and to address Martin's request to amend her petition. Martin stated that she requested leave to amend for the purpose of (1) adding allegations concerning invasion of privacy, (2) amending the tortious interference with contract allegations, (3) adding a claim for damages, and (4) correcting typographical errors. She argued that discovery was ongoing, that no pretrial or trial dates had been set, that this was the first time she had requested leave to amend, and that she did not become aware of the need to amend until receiving responses to discovery requests in March of that year.

¶ 5   Defendants argued that Johnson and Hoover had acted as employees of the School District, and thus under no circumstance could they be held liable on a theory of tortious interference with contract. Defendants explained that "Now, the Court did not specifically state whether it was with or without prejudice, but the Court granted the motion which stated in the motion itself that it was requesting a dismissal with prejudice." The trial court allowed Martin to amend the petition, but without the allegations relating to tortious interference with contract.

¶ 6   The same day as this hearing, July 1, 1996, Defendants filed a motion for sanctions against Martin relying 12 O.S.1991 § 2011. They argued that the new claim for invasion of privacy was frivolous, and that Martin had attempted to assert a claim that had been previously dismissed.

¶ 7   The hearing on the motion for sanctions for the amended petition occurred in August 1996. Defendants argued that Martin had no basis to reassert a claim that had been dismissed with prejudice, and had no basis to assert the privacy claim because it was based upon publication of a matter of public record. They requested sanctions in the form of their attorney's fees in responding to the application to file the fifth amend-ed petition and the motion and brief for sanctions.

¶ 8   Martin responded by arguing that case-law allowed a claim for tortious interference with contract in the circumstances she was alleging, that sustaining a motion to dismiss was an insufficient basis to award sanctions, and that no attempt to reassert the claim had been made after the journal entry had been settled. On the privacy claim she referenced certain court opinions upon which she relied.

¶ 9   The trial court stated with regard to the invasion of privacy claim that "there was some valid argument for that." She noted that the tortious interference with contract claim was dismissed in open court on April 22nd, that Plaintiff reasserted it in her Motion to Amend which the court then later denied, and that to prevent further similar acts a sanction should be imposed. The court awarded sanctions and directed Defendants to submit to the court an itemization of the amount of fees expended.

¶ 10   Defendants then sought more sanctions. They sought $596.40 as a sanction for Martin's non-appearance at a deposition. They also sought an order dismissing her remaining claims without prejudice, and making the payment of the sanction awards as conditions for refiling the action. Defendants sought this relief pursuant to 12 O.S. § 3237.

¶ 11   Defendants asserted that on July 15, 1996, they had served Martin with a notice for her deposition to be taken. Martin and her lawyer appeared on August 16, 1996 for the deposition. The deposition was not completed that date, and pursuant to agreement of the parties Martin was to appear on August 23rd to complete the deposition.

¶ 12   On August 21, 1996 counsel for Martin served upon counsel for Defendants a motion to withdraw as counsel. On August 22, 1996 Martin sent counsel for Defendants a facsimile letter stating that she could not attend the scheduled deposition because of illness. She further stated that she would

but denied the summary judgment on the defamation claim because of a disputed issue of fact. The trial court's adjudication of the partial sum-mary judgment motion was not challenged on appeal or on certiorari, and is thus not before us.

not attend a further deposition until she obtained counsel, and that her appeal of the order granting sanctions had stopped the discovery proceedings in the trial court. On August 23, 1996 the trial court allowed Martin's counsel to withdraw from the case.

¶ 13 A hearing was then held on September 30th on Defendants' motions to dismiss, for sanctions, attorney's fees, and to settle a journal entry. Martin responded with an affidavit of a licensed physician treating Martin. It stated that Martin's "medical condition prevented her from being present at the deposition scheduled on the 23rd of August, 1996." The trial court made a finding that Martin failed to comply with discovery, and this finding was based upon the **sole** circumstance of her failure to appear at the deposition on August 23rd.

¶ 14 As sanctions for her non-appearance the trial court did the following: It ordered Martin to pay $418.00 for attorneys fees, $50.40 for mileage expense, and $128.00 court reporter fees. It further dismissed all the remaining portions of her suit without prejudice, and conditioned her re-filing of it upon payment of the sums ordered.[3]

¶ 15 Plaintiff appealed. The Court of Civil Appeals affirmed the sanction for attempting to amend, but reversed the sanctions, including dismissal, for failure to attend. We have granted certiorari. Before addressing the merits of her appeal we need to resolve an issue of appellate procedure raised by Defendants.

## APPEAL OF THE INTERLOCUTORY ORDERS

¶ 16 Martin's appeal, as well as her petition for certiorari, includes a challenge of certain interlocutory orders. The orders dismissed her claim for tortious interference with contract, denied her leave to amend her allegations pertaining to this theory, and imposed a sanction for attempting to amend her petition. The latter was subsequently incorporated into the judgment which also sanctioned her for her failure to appear at the deposition. Defendants counter with the argument that the first dismissal order is not properly here. They argue that those orders are not final orders, and not appealable for reason that claims were left unadjudicated in the trial court.

¶ 17 Martin brought her appeal here from the judgment that sanctioned her and dismissed all her claims. This order acts as an end-of-the-line disposition of her action, and is appealable. *Hammonds v. Osteopathic Hosp. Founders Ass'n,* 1996 OK 54, ¶¶ 3–4, 917 P.2d 6, 7. The order does allow Martin to refile her action upon payment of the attorney fees and expenses. But her ability to refile the action does not make the judgment non-appealable. See *Gilliland v. Chronic Pain Associates, Inc.,* 1995 OK 94, ¶ 7, 904 P.2d 73, 76, where we explained that a suit's termination is deemed appealable although it may be refiled. This Court possesses appellate jurisdiction to review the judgment dismissing her claims and imposing sanctions.[4]

¶ 18 Defendants do not challenge our review of the judgment per se, but of the interlocutory order prior to judgment that dismissed Martin's claim based upon tortious interference with contract. We agree that the dismissal order was unappealable at the time of adjudication, because it disposed of only one of the many claims pled. *LCR, Inc. v. Linwood Properties,* 1996 OK 73, ¶ 9, 918 P.2d 1388, 1392; *Liberty Bank and Trust Co. v. Rogalin,* 1996 OK 10, ¶ 10, 912 P.2d 836, 838. However, when this Court reviews a

---

3. Because we reverse the orders at issue herein on other grounds, we decline to explore our jurisprudence relevant to an order that conditions the refiling of dismissed suit upon the payment of litigation expenses in a previous proceeding.

4. Martin argues on appeal that her allegations were sufficient to state a claim against certain defendants based upon a theory of tortious interference with contract. Martin sought leave to amend her petition to add allegations relevant to this theory. The trial court both dismissed and denied leave to amend on the basis that such a tort could not, as a matter of law, be brought against employees of an employer when the employer was a party to the contract. Because the decision of the trial court was limited to this ground, and Martin was denied leave to amend her petition to add allegations on this ground, our opinion does not address the sufficiency of allegations that may, or may not, be pled upon remand.

judgment upon appeal it may "reverse, vacate or modify any intermediate order involving the merits of the action, or any portion thereof." 12 O.S.1991 § 952. Intermediate or interlocutory orders anterior to judgment may thus be reviewed on appeal from the judgment. *LCR, Inc. v. Linwood Properties,* 1996 OK 73, at n. 19, 918 P.2d at 1393. *Cf. Liberty Bank and Trust Co. v. Rogalin,* at ¶ 14, 912 P.2d at 839, (interlocutory orders were subject to review upon subsequent appeal from judgment).

## THE FIRST SANCTIONS ORDER FOR ATTORNEY FEES

■ ¶ 19  Defendants requested that the interference with contract claim be dismissed with prejudice. When the motion was heard and granted the trial court did not expressly state whether the dismissal was with prejudice or without leave to amend. Martin then sought leave to amend her petition.

¶ 20  Defendants argue that Martin violated 12 O.S. § 2011 by reasserting a claim previously dismissed with prejudice when she sought leave to amend her petition. Martin argues that in these circumstances she possessed a statutory right to amend and was asserting that right.

¶ 21  Her attempt to file the Fifth Amended Petition was what got Martin in trouble. The allegations against Johnson in the Fourth Amended Petition are identical to those in the Fifth Amended Petition, with one exception. She first alleged that Johnson interfered with her contract in certain particulars, but in the latter petition she added the allegation that he was acting in "bad faith" when he did those things. The allegations against Hoover are also similar in both petitions. But in the Fifth Amended Petition Martin adds the allegation that Hoover was "acted in bad faith and with malice" against Martin.

¶ 22  Defendants rely upon language in *Voiles v. Santa Fe Minerals, Inc.,* 1996 OK 13, 911 P.2d 1205, stating that an action for interference with contract would not lie against an agent of a principal to the contract. *Id.* at ¶ 18, 911 P.2d at 1210. Johnson and Hoover argued that they were agents of the school district for the purpose of an action based upon Martin's teaching contract. Martin countered with the argument that the rule did not apply when an agent was acting in bad faith and with malice.

¶ 23  Defendants countered with several arguments, one of which was that Martin's allegations of bad faith occurred in those portions of the petition alleging sexual harassment and intentional infliction of emotional distress, and not in the specific portions of the petition alleging interference with contract. Upon the conclusion of the oral argument the trial court asked Defendants if they had anything further to add, and they stated that:

> Yes, Your Honor. Again, just to repeat that sexual harassment claim does, indeed, say that it was in bad faith; but it's not in the tortious interference with—intentional infliction of emotional distress clearly alleges acts outside the scope of employment. Again, that's not in the tortious interference with contract count.

In sum, Defendants argued at the hearing that Martin's petition had a defect in pleading, in that while in some portions thereof she included allegations of bad faith and malice, in the tortious interference with contract portion of her petition she had not done so.

■ ¶ 24  When Martin then requested leave to amend her petition by adding language of bad faith and malice to her interference with contract claim the Defendants sought sanctions, which the Court imposed. When reviewing a § 2011 sanction we look at whether the offending counsel could reasonably have argued in support of the legal theory advanced at the time of the offending conduct. *Hammonds v. Osteopathic Hospital Founders Ass'n,* 1996 OK 100, ¶ 7, 934 P.2d 319, 322. Martin claims that she sought leave to amend pursuant to statute, and as provided for the circumstances that existed at the time she made her motion.

Our Pleading Code states that:

G.  FINAL DISMISSAL ON FAILURE TO AMEND. *On granting a motion to dismiss a claim for relief, the court shall grant leave to amend if the defect can be remedied and shall specify the time within which an amended pleading shall be filed.*

If the amended pleading is not filed within the time allowed, final judgment of dismissal with prejudice shall be entered on motion except in cases of excusable neglect. In such cases amendment shall be made by the party in default within a time specified by the court for filing an amended pleading. Within the time allowed by the court for filing an amended pleading, a plaintiff may voluntarily dismiss the action without prejudice.

12 O.S.1991 § 2012(G), (emphasis added).

The Pleading Code states that in granting a motion to dismiss a claim the court shall grant leave to amend if the defect can be remedied.

¶ 25 Here the trial court did not state if it was granting the motion to dismiss based upon a pleading defect, or for some other reason advanced by Defendants. Defendants did argue at the hearing that the claim had a pleading defect. The transcript of the hearing on the motion to dismiss shows that neither of the parties nor the court used the language "with prejudice" during the hearing. The record shows that no mention was made during the hearing whether leave to amend was either granted or denied.

¶ 26 The record also shows that the motion to dismiss was the first challenge to the legal sufficiency of the petition's interference with contract claim. Thus, we are not presented with the situation where a trial court has unequivocally dismissed a claim for a non-curable pleading defect, and then a plaintiff seeks to re-file the dismissed claim in the guise of an amended petition. Finally, if Martin could reasonably have believed that the claim was dismissed because of a pleading defect she could reasonably have believed that she was allowed to request leave to amend her pleading. In the trial court she cited *Kelly v. Abbott,* 1989 OK 124, 781 P.2d 1188, an opinion stating that a trial court has a mandatory duty pursuant to § 2012(G) to grant leave to amend when a defect in plead-

ing may be remedied. *Id.* 1989 OK 124, at ¶ 6, 781 P.2d at 1190. We conclude that Martin could reasonably have believed that the trial court dismissed her claim because of a pleading defect, and she could reasonably have argued that her amendment was allowed pursuant to § 2012. The order awarding sanctions based upon her motion seeking leave to amend is thus vacated.

## THE ORDER REFUSING LEAVE TO AMEND THE PLEADINGS

¶ 27 Martin also appeals the decision of the trial court to dismiss her claim based upon tortious interference with contract without allowing her to amend. Her suit contains allegations relating to a breach of contract against the School District as well as those sounding in tort against the District and as individuals. At this point in the litigation we are concerned only with the issue of whether the petition could be amended to state a claim for relief against Johnson and Hoover individually based upon the tort of interference with contract.

¶ 28 The tort liability of a school district is, of course, subject to the provisions of the Governmental Tort Claims Act, (51 O.S.1991 §§ 151 et seq.). 51 O.S.Supp.1994 § 152(8)(b), (a school district is a political subdivision for the purpose of the Act). Application of the Act may require a determination of whether a government employee was acting within the scope of employment.[5] An act of the employee is not in the scope of employment if the employee acted maliciously or in bad faith. *Nail v. City of Henryetta,* 1996 OK 12, ¶ 7, 911 P.2d 914, 916. A government employee acting within the scope of employment is relieved from private liability for tortious conduct. *Nelson v. Pollay,* 1996 OK 142, ¶ 7, 916 P.2d 1369, 1373. However, when an employee acts outside the scope of employment the political subdivision is relieved from liability. *Parker v. City of Mid-*

5. 51 O.S.1991 § 152, and its subsequent amendments define scope of employment:
9. "Scope of employment" means performance by an employee acting in good faith within the duties of his office or employment or of tasks lawfully assigned by a competent authority including the operation or use of an agency vehicle or equipment with actual or implied consent of the supervisor of the employee, but shall not include corruption or fraud;

*west City,* 1993 OK 29, ¶ 12, 850 P.2d 1065, 1068.

¶ 29 The essence of the Defendants' argument is that even if they were acting outside of the scope of their employment, in bad faith and maliciously, for the purpose of the Governmental Tort Claims Act, they were nevertheless agents (or employees) of the School District, for the purpose of the interference with contract claim. They argue that as agents or employees of the School District no action for interference with contract would lie.

¶ 30 We have held that an agent of a principal cannot be held liable for interfering with a contract between the principal and a third party. *Voiles v. Santa Fe Minerals, Inc.,* 1996 OK 13, ¶ 18, 911 P.2d 1205, 1210; *Ray v. American Nat. Bank & Trust Co. of Sapulpa,* 1994 OK 100, ¶ 15, 894 P.2d 1056, 1060; *Whitson v. Oklahoma Farmers Union Mut. Ins. Co.,* 1995 OK 4, ¶ 6, 889 P.2d 285, 287. However, in *Ray, Voiles, and Whitson,* the Court did not address whether an agent could be held personally liable on an interference with contract claim if the agent was acting against the interests of the principal and in furtherance of interests of the agent.

¶ 31 Some courts have examined the issue in the context of officers, agents, or employees of a corporation interfering with a contract of their corporate employer. In *Mason v. Oklahoma Turnpike Auth.,* 115 F.3d 1442 (10th Cir.1997), the federal court observed the following:

The Oklahoma Supreme Court has not directly addressed whether a corporate officer, director or other employee can be held liable for tortiously interfering in a corporate contract. We are convinced, however, that corporate employees can be found liable under Oklahoma law for tortious interference with a corporate contract. See *Johnson,* 802 P.2d at 1297 (sug-

gesting a tortious interference claim could be stated against the supervisor who actually made the decision to terminate the plaintiff). As with any tortious interference claim, the determinative issue remains whether the actor's interference was justified, privileged, or excusable. The Oklahoma Supreme Court has held that "it is not unlawful for one to 'interfere with the contractual relations of another if [this is done] by fair means, if [it is] accomplished by honest intent, and if [it is done] to better one's own business and not to principally harm another.' " *Morrow Dev. Corp. v. American Bank & Trust,* 875 P.2d 411, 416 n. 21 (Okla.1994) (alterations in original) (quoting *Del State Bank v. Salmon,* 548 P.2d 1024, 1027 (Okla.1976)). Therefore, a corporate officer's or director's interference with a corporate contract will be privileged only when the interference is undertaken in good faith and for a bona fide organizational purpose. *Q.E.R., Inc. v. Hickerson,* 880 F.2d 1178, 1184 (10th Cir.1989) (applying Colorado law); *Allison v. American Airlines, Inc.,* 112 F.Supp. 37, 38 (N.D.Okla.1953).

*Id.* 115 F.3d at 1453, note omitted.[6]

The Tenth Circuit thus concluded that in Oklahoma for a corporate officer's interference with a corporation's contract to be privileged as to that officer it must have been done in good faith.[7] Although the holding of the federal court on matter of state law has no precedential value in this proceeding, we agree with its conclusion.

▬▬▬▬ ¶ 32 It is fundamental that an employee or agent must act in good faith and in the interest of the employer or principal. *Butcher v. McGinn,* 1985 OK 58, ¶ 18, 706 P.2d 878, 882. If an employee acts in bad faith and contrary to the interests of the employer in tampering with a third party's contract with the employer we can divine no

6. The federal court noted that we had declined to examine the issue in *Hinson v. Cameron,* 1987 OK 49, n. 3, 742 P.2d 549, 551–552. *Mason,* 115 F.3d at 1453, n. 8.

7. The federal court did not note that this Court had previously allowed an action to proceed by an employee of a corporation against the directors of the corporation where the action was

based upon allegations that the directors interfered with the employment contract. *Holland v. Perrault,* 1957 OK 138, 312 P.2d 976. However, *Holland* was limited to the question of whether a prior judgment barred the subsequent interference with contract claim, and it did not determine whether the claim itself was cognizable in Oklahoma courts.

reason that the employee should be exempt from a tort claim for interference with contract. Courts in other jurisdictions agree.[8]

¶ 33 Of course, characterizing an employee's conduct as contrary to the interests of the employer cannot be based merely upon the employee's interference with the contract. *Voiles v. Santa Fe Minerals, Inc., supra, Ray v. American Nat. Bank & Trust Co. of Sapulpa, supra, Whitson v. Oklahoma Farmers Union Mut. Ins. Co., supra.* Every breach of contract does not give rise to a claim of tortious interference with contract merely because an employee or agent of a party to the contract was involved in the breach. An allegation that a breach of contract occurred and was effectuated by an employee of the School District, does not, by itself, show a tortious breach of contract. In *Hayes v. Eateries, Inc.,* 1995 OK 108, 905 P.2d 778, we said that the wrongful discharge tort pursuant to *Burk v. K–Mart Corp.,* 1989 OK 22, 770 P.2d 24, was not designed to protect an employee from the employer's

poor business judgment. *Hayes,* at ¶ 27, 905 P.2d at 788. The same observation may be made concerning the tort of interference with contract. The interference with contract tort is not designed to protect against an employee acting in good faith but using poor business judgment. Acting in good faith and using poor business judgment are not mutually exclusive.[9]

¶ 34 Martin sought to amend her petition to add allegations that the two employees of the school district tortiously interfered with her teaching contract. Defendants argued that as a matter of law such an action could not be brought against the employees because their employer was the other party to the contract. The trial court agreed, but did not determine the sufficiency of Martin's proposed allegations. On an appeal this Court does not make first instance determinations on disputed questions of fact or law. *YWCA v. Melson,* 1997 OK 81, n. 1, 944 P.2d 304, 306. We decline to make a premature deter-

---

**8.** For cases from other states in accord, see:

*Bear v. Volunteers of America, Wyoming, Inc.,* 964 P.2d 1245 (Wyo.1998), (as long as the employee acted within the scope of his or her authority, the employee's actions in recommending that another employee be discharged may be justified as a matter of law); *McGanty v. Staudenraus,* 321 Or. 532, 543, 901 P.2d 841 (1995), (when an employee acts within the scope of employment, that employee is not a third party to a contract between the employer and another for the purpose of the tort of intentional interference with economic relations); *Shea v. Emmanuel College,* 425 Mass. 761, 682 N.E.2d 1348 (1997), (court properly granted summary judgment against terminated college employee's interference of contract action against her former supervisor because employee failed to create genuine issue of material fact as to whether former supervisor had acted with actual malice in arranging for her discharge); *Murray v. St. Michael's College,* 164 Vt. 205, 667 A.2d 294 (1995), (the tort is applicable in limited situations against other employees or officers of the plaintiff's employer, the key factor being whether the defendants were acting outside the scope of their employment to further their own interests); *Wagenseller v. Scottsdale Memorial Hosp.,* 147 Ariz. 370, 392, 710 P.2d 1025 (1985), (intentional interference with contract claim may be brought against supervisor). *Cf. Hoschler v. Kozlik,* 3 Neb.App. 677, 529 N.W.2d 822 (1995), (an officer, director, or employee of a corporation is not liable for its breach of contract on the theory that he induced such breach if he acts in his official capacity on behalf of the corporation and not as an individual for

his individual advantage); *Hickman v. Winston County Hosp. Bd.,* 508 So.2d 237 (Ala.1987), (courts have held that claim of tortious interference with former employee's contract of employment cannot be maintained against officers or employees of a corporation unless those persons were acting outside their scope of employment and were acting with actual malice); *Murray v. Bridgeport Hosp.,* 40 Conn.Supp. 56, 480 A.2d 610 (1984), (although an agent acting legitimately within the scope of agent's authority cannot be held liable for interfering with or inducing principal to breach a contract between principal and a third party, an agent can be held liable for such interference or inducement if agent did not act legitimately within the agent's scope of duty but used the corporate power improperly for personal gain); *Holloway v. Skinner,* 898 S.W.2d 793 (Tex.1995), (on an interference with contract claim a plaintiff must show that the officer of a corporation defendant acted in a fashion so contrary to the corporation's best interests that the officer's actions could only have been motivated by personal interests).

**9.** *See Hargrave v. Canadian Valley Elec. Co-op., Inc.,* 1990 OK 43, ¶ 24, 792 P.2d 50, 57, (the business judgment rule shields a director or trustee from liability in the case of an honest error in judgment); *Warren v. Century Bankcorporation, Inc.,* 1987 OK 14, n. 5, 741 P.2d 846, 849, (directors and officers of a corporation will not be shielded from liability by the business judgment rule when they engage in acts of self-dealing or conflict of interest).

mination in this Court. We thus reverse the judgment of the District Court declining to allow Martin to amend her petition in her claim that the two employees of the school district tortiously interfered with her contract. She may file her amended petition.

## THE SANCTIONS FOR FAILING TO APPEAR

■ ¶ 35 The trial court awarded the sanctions pursuant to 12 O.S.1991 § 3237(E). That subsection provides that when a party receives proper notice of a deposition to appear and testify, and then fails to appear:

> ... the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs a, b and c of paragraph 2 of subsection B of this section. In lieu of or in addition to any order, the court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantial-

ly justified or that other circumstances make an award of expenses unjust.

The failure to act as described in this subsection may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order as provided by subsection C of Section 3226 of this title.

This language refers to paragraph 2 of subsection B which provides for a variety of orders to sanction improper conduct in discovery matters.[10]

■ ¶ 36 Defendants did not notice Martin for the continuation of the deposition, nor compel her attendance by court order. Martin argues that an order compelling her attendance is necessary prior to the imposition of sanctions in the form of a dismissal. This view is correct.

■ ¶ 37 Section 3237(E) does state that when the party fails to attend the deposition the court may enter such orders "as are just." Section 3237(B)(2)(c) states that a court's order may be "dismissing the action or proceedings or any part thereof, or rendering a judgment by default against the

---

**10.** 12 O.S.1991 § 3237(B)(2):

2. SANCTION BY COURT IN WHICH ACTION IS PENDING. If a party or an officer, director or managing agent of a party or a person designated under paragraph 6 of subsection C of Section 3230 or subsection A of Section 3231 of this title to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subsection A of this section or Section 3235 of this title, or if a party fails to obey an order entered under subsection F of Section 3226 of this title, the court in which the action is pending may make such orders in regard to the failure as are just. Such orders may include the following:

a. An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order,

b. An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence,

c. An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceedings or any part thereof, or rendering a judgment by default against the disobedient party,

d. In lieu of or in addition to the orders provided for in subparagraphs a through c of this paragraph, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination,

e. Where a party has failed to comply with an order under subsection A of Section 3235 of this title requiring him to produce another for examination, such orders as are listed in subparagraphs a, b and c of this paragraph, unless the party failing to comply shows that he is unable to produce such person for examination,

f. If a person, not a party, fails to obey an order entered under subsection C of Section 3234 of this title, the court may treat the failure to obey the order as contempt of court.

In lieu of or in addition to the orders provided for in this paragraph, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

disobedient party, ...." However, in *Helton v. Coleman*, 1991 OK 43, 811 P.2d 100, we said that § 3214(B)(2) (now § 3237) requires an order compelling discovery. It is true that *Helton* involved (B)(2)(f), as opposed to (B)(2)(c) in the present case, but our opinion therein relied upon *Hill v. Pierce Mobile Homes, Inc.*, 1987 OK CIV APP 40, 738 P.2d 1380. See *Helton*, at ¶ 11, 811 P.2d at 101–102, where we said that "We are persuaded that the Court of Appeals correctly concluded that a motion to compel is necessary under Section 3214." *Hill*, like the present case, involves (B)(2)(c), but in the former the transgression was the failure to answer interrogatories instead of non-attendance at a deposition. We conclude that when a party fails to appear at a deposition, and a sanction in the form of a dismissal is sought pursuant to the combined authority of § 3237(B)(2) and (E), the dismissal must be based upon the failure to obey an order compelling the person to attend the deposition.

¶ 38 Both § 3237(B) and (E) state that a party's failure to comply with discovery should not result in a sanction if "the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." In light of our above conclusion we need not inquire into whether Plaintiff's medical excuse of itself would have prevented the dismissal.[11]

¶ 39 The trial court also awarded attorney's fees as a sanction for Martin's non-appearance, and such award may be made pursuant solely to § 3237(E). The amount awarded for attorney's fees, mileage expense, and court reporter fees all relate to August 23, 1996, the day Martin's medical affidavit states that she was unable to attend the deposition. Martin's physician's affidavit was not controverted by the Defendants. Defendants were notified of Martin's infirmity one day prior to the deposition, and were in a position to mitigate these expenses. We conclude that an award of expenses as sanction is unjust because her absence at the scheduled deposition was, according to the only evidence, due to medical reasons, and Defendants had notice of this prior to the scheduled date. The award of money to Defendants for Martin's failure to attend the deposition is thus reversed.

## SUMMARY

¶ 40 In sum, The opinion of the Court of Civil Appeals is vacated, the trial court's order of sanctions for Martin's request to amend her petition is reversed, the order of the trial court dismissing her claim with prejudice and denying Martin leave to amend her petition to add allegations that employees of the school district tortiously interfered with her contract is reversed, the dismissal for Martin's failure to appear at a deposition is reversed, and the award to Defendants for Martin's failure to attend the deposition is reversed. The cause is remanded to the District Court for further proceedings consistent with this opinion.

¶ 41 KAUGER, C.J., SUMMERS, V.C.J., HODGES, LAVENDER, OPALA, JJ.— concur.

¶ 42 ALMA WILSON, J.—concurs in result.

¶ 43 HARGRAVE, J.—concurs in part, dissents in part.

¶ 44 SIMMS, J. with whom WATT, J. joins dissenting. I would deny certiorari.

---

11. We observe that generally appellate courts in other jurisdictions have not sustained dismissals that are based upon a party's absence at one deposition scheduled by a lawyer's notice. *Gallo v. Henke*, 107 Ill.App.3d 21, 27, 62 Ill.Dec. 766, 436 N.E.2d 1068 (1982), (dismissal with prejudice was too drastic after the plaintiff failed to appear for her deposition only once and the record failed to disclose a wilful or contumacious refusal to comply with discovery); *TransAmeri-can Natural Gas Corp. v. Powell*, 811 S.W.2d 913 (1991), (dismissal was not a proper sanction for non-appearance at one scheduled deposition); *Siegel v. Smith*, 836 S.W.2d 193 (Tex.App.San Antonio, 1992), (dismissal was improper because party was physically unable to appear, but court did not abuse its discretion in awarding attorney's fees for party's absence at second noticed deposition).