MCINTYRE v. STATE ex rel. OK. DEPT. OF MENTAL HEALTH AND SUBSTANCE ABUSE SERVICES
2022 OK CIV APP 32
Case Number: 120085
Decided: 07/22/2022
Mandate Issued: 08/17/2022
IVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA DIVISION IV
Cite as: 2022 OK CIV APP 32, __ P.3d __

 

DR. ROBERT MCINTYRE, M.D., Plaintiff/Appellant,
v.
STATE OF OKLAHOMA ex rel. OKLAHOMA DEPARTMENT OF MENTAL HEALTH AND SUBSTANCE ABUSE SERVICES, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE NATALIE MAI, TRIAL JUDGE

AFFIRMED

Daniel J. Gamino, DANIEL J. GAMINO & ASSOCIATES, P.C., Oklahoma City, Oklahoma, for Plaintiff/Appellant

Dixie L. Coffey, ASSISTANT ATTORNEY GENERAL, OKLAHOMA ATTORNEY GENERAL'S OFFICE, LITIGATION UNIT, Oklahoma City, Oklahoma, for Defendant/Appellee

DEBORAH B. BARNES, PRESIDING JUDGE:

¶1 Plaintiff Robert McIntyre, M.D., appeals from the district court's grant of summary judgment in favor of Defendant State of Oklahoma ex rel. Oklahoma Department of Mental Health and Substance Abuse Services (DMHSAS) on its counterclaim for recovery of Dr. McIntyre's relocation expenses, as well as from the dismissal of Dr. McIntyre's claims against DMHSAS. Based on our review, we affirm.

BACKGROUND

I. Original Petition

¶2 Dr. McIntyre filed this action in the District Court of Oklahoma County in April 2016. Dr. McIntyre asserted the following theories of recovery against DMHSAS in his original petition: "fraudulent inducement to contract (15 O.S. 2011, § 51 and § 53)," "breach of implied covenants (15 O.S. 2011, § 171 and § 172)," and "constructive discharge." Dr. McIntyre alleged DMHSAS "actively recruited [him] for a staff psychiatrist position," and that he accepted DMHSAS's invitation to visit the Oklahoma Forensic Center (OFC), a subsidiary of DMHSAS, in Vinita, Oklahoma. Dr. McIntyre alleged: "During that visit and subsequent to that visit [DMHSAS] elected to not disclose to [Dr. McIntyre] certain drastic limitations imposed on the vacant position in question," including:

that Dr. McIntyre would not be "free to practice the full scope of psychiatric medicine," and his "critical judgments, prescriptions, orders, and ER referrals were all subject to change by a supervisor located 80 miles away" who had no contact with the patients;

that "OFC

that "Defendant would ignore obvious risks to staff and patient safety and to psychiatric malpractice liability," and "would make decisions to exacerbate the problems and the liabilities rather than to reduce the problem";

that "Defendant would continue its practice of admitting medically unstable patients that were far beyond the scope of psychiatry to OFC and posed a danger to staff and other patients";

that "Defendant would drastically cut and reduce the pharmacy formulary and thus deprive patients of required and necessary medications, prescribed for their condition by the treating psychiatrists";

that "Defendant would not address genuine staff medical concerns that arose over patient management, overcrowding, etc.," and that "any physician who raised questions about those issues would be labeled 'not a team player'";

that he would not be "allowed to discuss staff and patient safety concerns during the Joint Commission . . . 3-day inspection . . . during early 2016";

and that "[DMHSAS] executives in Oklahoma City would not enforce obvious and required remedial steps to correct problems at OFC reported by the medical staff."

¶3 Dr. McIntyre asserted that "on or around May 6, 2015[,] [he] accept[ed] the tendered OFC position," but that he "was purposefully, fraudulently uninformed of these matters by the Defendant[.]" He alleged he "discovered the nature and extent of the fraudulent inducement" only after relocating to Oklahoma from Arizona and only after he "began work on or around August 11, 2015." He asserted he "attempted in good faith to address those problems," but that the "fraudulent inducements and breach of implied covenants was so intolerable [that he] had no choice but to resign his position under that duress." Dr. McIntyre alleged that the implied covenants included:

that he "would be free to practice his full scope of medicine to insure patient health and safety, and not be subject to arbitrary and capricious changing without notice of [his] clinical judgments";

that he "would be allowed to accrue normal and lawful compensatory time off as earned and would be paid for that time";

that he would not "be expected to practice medicine where there were inordinate risks to staff and patient safety and psychiatric malpractice liability";

that he "would not be compelled to practice medicine in a workplace where medically unstable patients that are beyond the scope of psychiatry were routinely admitted and maintained";

and that he "would be allowed to prescribe, administer or dispense appropriate medication based on medical need from a full pharmaceutical formulary, not from a reduced formulary that eliminated necessary medications."

¶4 DMHSAS filed an answer in which it admitted Dr. McIntyre was offered a staff psychiatrist position with OFC in Vinita; that Dr. McIntyre accepted a position with OFC on or around May 7, 2015; and that Dr. McIntyre relocated from Arizona to Oklahoma and began work on or around August 11, 2015. DMHSAS otherwise denied Dr. McIntyre's allegations and asserted, among other things, that Dr. McIntyre "was an at will employee," that his "position was exempt from the [Fair Labor Standards Act]," and that he failed to meet "the prerequisites under the [Governmental Tort Claims Act (GTCA)]." DMHSAS also asserted a counterclaim against Dr. McIntyre, asserting he breached the parties' relocation repayment agreement by voluntarily resigning in February 2016. That is, DMHSAS asserted Dr. McIntyre agreed to reimburse DMHSAS by repayment of the relocation expenses if he left before two years of employment, that he left before the passage of two years, and that he should therefore be ordered to reimburse DMHSAS.

¶5 In May 2016, after filing its answer, DMHSAS removed the matter to the United States District Court for the Western District of Oklahoma. In an order filed in July 2016, the Western District Court stated that DMHSAS sought to "characterize[] [Dr. McIntyre's] causes as seeking relief under federal law[.]" The Western District Court summarized Dr. McIntyre's "claims in this action [as being] grounded on the State's alleged failure to disclose certain essential information when it recruited McIntyre for a staff position at [OFC] . . . , and on its alleged misrepresentations about the terms of McIntyre's employment." The Western District Court stated that "[w]hile McIntyre mentioned the Fair Labor Standards Act . . . in his first cause of action, . . . a single reference to federal law under these circumstances is not enough." Consequently, the federal district court remanded the matter to the District Court of Oklahoma County.

¶6 In August 2017, DMHSAS filed a motion to dismiss for failure to state a claim upon which relief can be granted. With regard to the theory of fraudulent inducement to contract and Dr. McIntyre's assertions that he "was purposefully, fraudulently uninformed" regarding the terms of his employment, DMHSAS stated that as a state agency it "cannot be held liable for fraud because (1) intentionally misrepresenting information about working conditions falls outside the scope of employment, and (2) fraud is specifically listed [in the GTCA] as a claim from which the state and its agencies are immune," citing 51 O.S. § 15251 O.S. Supp. 2016 § 15551 O.S. Supp. 2012 § 156

¶7 With regard to the theory of breach of implied covenants, DMHSAS asserted this theory should be dismissed because "Oklahoma courts do not recognize a cause of action for breach of implied covenants for an at-will employee," citing Burk v. K-Mart Corporation, 1989 OK 22770 P.2d 24

¶8 With regard to the theory of constructive discharge, DMHSAS stated, "There is no recognized cause of action in Oklahoma, standing alone, for 'constructive discharge.'" DMHSAS further stated, "Constructive discharge, if proven, provides only one of the requisite elements of a wrongful discharge claim," and a plaintiff must also "allege and prove the discharge was wrongful, i.e. discriminatory, retaliatory, illegal, or in violation of public policy." DMHSAS stated that, "[i]n failing to allege any harassment, discrimination, or any type of public policy violation, Dr. McIntyre has not properly pled a constructive discharge cause of action." Finally, DMHSAS asserted that "[w]rongful discharge is a tort,"

¶9 In his response, Dr. McIntyre stated that "OFC deliberately withheld from [him] several material facts about the actual terms and conditions of the proposed position of employment," and "fraudulently induced [him] to sign a contract by withholding the real working conditions . . . ." He stated that, "[d]eprived by OFC" of this information, he "accepted the staff psychiatrist position at OFC" and, "[v]ery soon after beginning his practice there, it became clear to [him] his consent to contract with OFC . . . was fraudulently induced." He asserted also that "OFC breached the implied covenants of the contract of employment," and "OFC created such hostile and abusive working conditions that Dr. McIntyre's workplace duties were changed, denigrated, and made intolerable."

¶10 In response to DMHSAS's argument that his fraudulent inducement claim is barred under the GTCA, he stated that "OFC's failure to disclose fully terms and conditions of [his] employment is the lawful basis for rescission of the contract of employment." He stated that "[a]ny action to cancel a contract and to obtain damages is an action of 'equitable' cognizance," and "is not a tort and therefore does not involve the [GTCA]." He stated that "a legal action to cancel a contract for fraudulent inducement sounds in equity, not in tort," and, similarly, that he "may pursue legal remedies for fraudulent inducement to contract, and such remedies lie in contract and in equity, not in tort."

¶11 In response to DMHSAS's arguments pertaining to the theory of breach of implied covenants, Dr. McIntyre stated that "[t]he only legal authority offered by [DMHSAS] is [Burk, 1989 OK 22during the life of the contract." He stated that such covenants "clearly exist" and that "Oklahoma case law is well settled that Oklahoma law has long recognized implied covenants of good faith and fair dealing in contracts." He stated that "in the case at bar covenants of good faith and fair dealing are implied in the contract between OFC and Dr. McIntyre and Dr. McIntyre is authorized to seek relief for OFC's breach of those implied covenants." Dr. McIntyre also asserted "the acts and omissions of OFC and [DMHSAS] led to [his] constructive discharge," and he asserted he "is proceeding in contract and in equity, not in tort. Therefore the GTCA has no applicability."

¶12 In the district court's order dismissing the original petition, filed in December 2017, it stated that "[e]ach of [Dr. McIntyre's claims] is a tort claim, and therefore [he] must comply with the GTCA before the state may consent to be sued in tort. [Dr. McIntyre] has not complied with the GTCA, and therefore [DMHSAS's] Motion is granted and [Dr. McIntyre's] claims are dismissed." However, Dr. McIntyre was granted leave by the district court to amend his petition. The district court stated that Dr. McIntyre "is granted leave to amend . . . under the doctrine of breach of contract or any other applicable cause of action."

¶13 This order was appealed by Dr. McIntyre. Indeed, this case is the subject of two prior appeals to a separate division of this Court. As explained in the opinion issued in the first of those two prior appeals -- Case No. 116,694, issued in June 2018, which arose from the dismissal of Dr. McIntyre's original petition by the District Court of Oklahoma County -- "[t]his action arises from Dr. McIntyre's agreement to relocate from Arizona to Vinita, Oklahoma, and work as a staff psychiatrist for [OFC]." That Court further explained:

OFC paid Dr. McIntyre $20,000 to relocate, with the understanding that [he] would remain employed for two years, or else repay the money. Dr. McIntyre separated from his employment with OFC after working for approximately six months. He sued OFC on three grounds which he described [in his original petition] as (1) fraudulent inducement to contract, (2) breach of implied covenants, and (3) constructive discharge. OFC filed an answer that included its counterclaim for breach of the relocation repayment agreement.

OFC filed a motion based on 12 O.S. § 201251 O.S. § 156

¶14 The Court further explained that, after the district court's order dismissing his claims but allowing him to amend his petition, Dr. McIntyre filed an amended petition, in November 2017, "asserting his claims as a breach of contract," and that OFC filed a motion to dismiss the amended petition; however, the Court explained that the trial court had not yet ruled on that motion and it was not before the Court in Case No. 116,694.

¶15 Turning to the appealability of the trial court's order dismissing the original petition, the Court pointed out, among other things, that "OFC's counterclaim for breach of the relocation reimbursement agreement has not been determined," "[n]either did the trial court expressly find there is no just cause for delay or direct the filing of a final judgment pursuant to 12 O.S. § 994

II. Amended Petition

¶16 In his amended petition, Dr. McIntyre set forth factual allegations similar to those found in his original petition, but asserted only the following claims: breach of contract, and "breach of implied covenants of contract (15 O.S. 2011 § 171 and § 172)." He asserted he accepted an "oral offer of an employment contract" in May 2015, that "[he] did perform fully under the contract," that he "performed all conditions precedent to recover under the contract," and that he has sustained damages as a result of "Defendant's breach of contract[.]" He asserted "Defendant breached the employment contract" as a result of the limitations listed above from his original petition, and that it also breached implied covenants.

¶17 DMHSAS filed a motion to dismiss the amended petition, and the district court, in an order filed in October 2018, "granted in part and denied in part" the motion, explaining that "the Amended Petition should be dismissed as to any claims of Defendant's breach of implied covenants, but [Dr. McIntyre] is allowed to amend the Amended Petition to plead a cause of action under the legal doctrine of equitable estoppel."

III. Second Amended Petition

¶18 In Dr. McIntyre's second amended petition, he set forth only a claim of "equitable estoppel." He asserted that DMHSAS "falsely represented or concealed certain facts central to the tendered position," including the limitations listed above from his original petition. He asserted he was without knowledge of the true facts, that the "false representations and/or concealments of true facts were made with the intention that Dr. McIntyre should act on them," and that he did "act upon" them to this detriment. He stated that equitable estoppel "is applicable . . . because it furthers the well settled public policy or interest that incarcerated persons and citizens should receive all appropriate medical care and expert psychiatric care in all cases determining mental competency to stand trial and related matters, 43A [O.S.] 2011 § 1-104 et seq." He also stated he "perform[ed] fully under the contract" and "performed all conditions precedent to recover under the contract[.]"

¶19 DMHSAS filed a motion to dismiss the second amended petition, stating that Dr. McIntyre "pleads the almost identical breach of contract claim asserted in his First Amended Petition, but now labels his cause of action as one for Equitable Estoppel." DMHSAS stated: "In essence, [Dr. McIntyre] appears to contend Defendant breached its at-will employment contract with [Dr. McIntyre], and thus, [Dr. McIntyre] should be permitted to recover contractual damages." DMHSAS argued, however, that because Dr. McIntyre's employment was terminable at will, he "cannot recover against [DMHSAS] for breach of his at-will employment contract," citing once again to Burk. Regarding equitable estoppel, DMHSAS stated, among other things, that Dr. McIntyre "fails to assert what action he seeks to be estopped under the doctrine of equitable estoppel," and "fail[s] to properly assert a claim for equitable estoppel[.]" It further asserted that "[e]ven if [Dr. McIntyre] had properly pled a claim for equitable estoppel, his claim cannot be asserted against [DMHSAS], a state agency because the doctrine of equitable estoppel is not ordinarily applicable to state agencies operating under statutory authority," citing Strong v. State ex rel. the Oklahoma Police Pension & Retirement Board, 2005 OK 45115 P.3d 889Poteau Valley Improvement Authority v. Oklahoma Public Employees Retirement System, 2010 OK CIV APP 45233 P.3d 423

¶20 In his response, Dr. McIntyre stated that "[t]o allow Defendant management's deliberate and purposeful misrepresentation of the employment position to entice Dr. McIntyre to move 938 miles to Vinita, Oklahoma is directly against the sound public policy that incarcerated persons and citizens should receive all appropriate medical care and expert psychiatric care . . . ." He stated:

[B]ased on the misrepresentations of OFC Executive Director and leadership [he] was without knowledge of the true facts of the position and that [he] believed the false representations and/or concealments that were made with the intent he should act on them and [he] relied on and did act on the aforesaid false representations and concealments to his detriment and relocated . . . to fulfill terms and conditions of an employment contract in a position that was substantially different than was described to him.

¶21 The trial court's order addressing the motion to dismiss the second amended petition is not contained in the appellate record, but the docket sheet reveals it was sustained by the trial court with leave to amend. Dr. McIntyre asserts the district court "commented on [his] legal counsel's 'creative draftsmanship' [in] the Second Amended Petition but dismissed the Second Amended Petition and said it should be filed under the doctrine of breach of contract."

IV. Third Amended Petition

¶22 In March 2019, Dr. McIntyre filed his third amended petition in which he set forth only one theory of recovery: breach of contract. He alleged he "contracted with the Defendant to practice medicine in the position of Staff Psychiatrist at OFC[.]" He asserted that "[he] did perform fully under the contract," but that "[a]fter [he] began work at OFC the Defendant breached that contract" as a result of the limitations listed above from his original petition. He asserted this breach "placed [him] in an untenable position and [he] had no alternative but to resign his position," and that the breach caused him to suffer various damages.

¶23 DMHSAS filed a motion to dismiss the third amended petition for failure to state a claim upon which relief can be granted. It asserted the district court had previously dismissed the same breach of contract claim set forth in Dr. McIntyre's first amended petition "due to [Dr. McIntyre's] employee-at will status[.]" DMHSAS reasserted its argument that, pursuant to Burk, Dr. McIntyre had failed to state a breach of contract claim.

¶24 Dr. McIntyre stated in his response that after he began his employment "as Staff Psychiatrist at OFC he became aware of OFC's substantial and pervasive breaches of contract and breach of implied duty of good faith and fair dealing." He asserted DMHSAS's reliance on Burk "misses the mark," and that his claim "arises from OFC's breach of implied covenants of fair dealing between the parties during the life of the contract," and his "cause of action arose" and "OFC's breach of the covenants of good faith and fair dealing occurred during the life of the contract." He asserted: "It was the OFC breach of implied covenants of good faith and fair dealing during the life of the contract that created this cause of action for breach of contract."

¶25 In the district court's order filed in May 2019, the court granted the motion to dismiss the third amended petition, stating: "[Dr. McIntyre's] cause of action for Breach of Contract is dismissed. [Dr. McIntyre's] cause of action for Breach of Implied Covenants of fair dealing was previously dismissed by this Court, and may not be reasserted."

¶26 Dr. McIntyre appealed from this order, resulting in the second appellate opinion, in Case No. 118,085, once again dismissing the appeal for lack of an appealable order because "[DMHSAS's] counterclaim remains pending below," and "the order was not certified" as an immediately appealable interlocutory order.

V. Summary Adjudication on the Counterclaim

¶27 In July 2021, DMHSAS filed a motion for summary judgment on its counterclaim to recover relocation expenses, attaching, inter alia, a copy of the Relocation Repayment Agreement. It also attached an affidavit asserting that Dr. McIntyre had been "financially assist[ed] . . . with his relocation expenses" pursuant to the Relocation Repayment Agreement "in the amount of [$20,000]"

¶28 In his response, Dr. McIntyre did not set forth and number any material facts asserted in DMHSAS's motion which he claimed to be in controversy.

curtailed [my] professional medical practice to the point where [I] could not provide standard of care practice to my patients. My hands were tied where I was forced to practice medicine in an unprofessional, incomplete and unsafe manner which exposed OFC to medical malpractice claims. It also exposed me to disciplinary action by the Oklahoma Board of Medical Licensure and Supervision based on unprofessional practice of medicine, 59 O.S. 2011, § 841

Dr. McIntyre argued, in effect, that because the dismissal of his claims was in error and a dispute remained "over the Defendant's own breach of contract," summary judgment should not be granted on DMHSAS's counterclaim. However, in its reply, DMHSAS pointed out that Dr. McIntyre's breach of contract claim was previously dismissed.

¶29 In the district court's Judgment filed in November 2021, it determined "that Defendant's Motion for Summary Judgment on Defendant's Counterclaim should be granted. [Dr. McIntyre] is obligated to repay Defendant [$6,095.57] pursuant to the Relocation Repayment Agreement."

¶30 From this Judgment, and from the district court's orders dismissing his original petition and the third amended petition, Dr. McIntyre appeals.

STANDARD OF REVIEW

¶31 "Motions to dismiss are generally viewed with disfavor, and the standard of review before this Court is de novo." Dani v. Miller, 2016 OK 35374 P.3d 779

The purpose of a motion to dismiss is to test the law that governs the claim, not the underlying facts. Accordingly, when considering the legal sufficiency of the petition the court takes all allegations in the pleading as true together with all reasonable inferences that may be drawn from them.

Id. (citations omitted).

¶32 Review of a summary judgment also "calls for de novo review." Wood v. Mercedes-Benz of Okla. City, 2014 OK 68336 P.3d 457

Under the de novo standard, this Court is afforded plenary, independent, and non-deferential authority to examine the issues presented. When examining an order sustaining summary judgment, this Court must determine whether the record reveals disputed material facts. Even when basic facts are undisputed, motions for summary judgment should be denied, if from the evidence, reasonable persons might reach different inferences or conclusions. All facts and inferences must be viewed in a light most favorable to the party opposing summary adjudication.

Id. (internal quotation marks omitted) (citations omitted).

ANALYSIS

¶33 Dr. McIntyre originally appealed only from the November 2021 Judgment granting summary judgment on DMHSAS's counterclaim. Dr. McIntyre mentioned in his Petition in Error the existence of the two prior appeals arising from the underlying case: Case Nos. 116,694 (mandated June 2018) and 118,085 (mandated June 2020). On December 22, 2021, the Oklahoma Supreme Court issued an order stating, in part, that "[i]f appellant wishes to appeal the order(s) that were the subject of the prior premature appeals, appellant must file an amended petition . . . attaching any appealable orders for which appellant seeks review by this Court." Dr. McIntyre subsequently filed an Amended Petition in Error attaching, in addition to the Judgment granting summary judgment on the counterclaim, the district court's orders (1) granting DMHSAS's original motion to dismiss, and (2) granting DMHSAS's motion to dismiss the third amended petition.

¶34 Although the orders of dismissal did not become appealable until entry of the order granting summary adjudication on DMHSAS's counterclaim, the dismissal orders are separately reviewable because, "when this Court reviews a judgment upon appeal it may 'reverse, vacate or modify any intermediate order involving the merits of the action, or any portion thereof.' Intermediate or interlocutory orders anterior to judgment may thus be reviewed on appeal from the judgment." Martin v. Johnson, 1998 OK 127975 P.2d 889

I. Order Granting Motion to Dismiss Original Petition

¶35 In Dr. McIntyre's Petition in Error, he raises the following issues pertaining to the order dismissing his original petition. He asserts his "cause[s] of action for fraudulent inducement to contract" and "for constructive discharge" "sound[] in contract, not in tort, and therefore [he] did not have to comply with the [GTCA]."

¶36 We reject Dr. McIntyre's argument with regard to fraud. Dr. McIntyre asserts his theory of fraudulent inducement to contract pursuant to 15 O.S. 2011 § 5351 O.S. Supp. 2014 § 15251 O.S. Supp. 2016 § 155See Cooper v. Parker-Hughey, 1995 OK 35894 P.2d 1096Z.D. Howard Co. v. Cartwright, 1975 OK 89537 P.2d 345

¶37 We also reject Dr. McIntyre's argument with regard to constructive discharge. As with fraud, because constructive discharge is a tort, Dr. McIntyre had to comply with the GTCA. See Ho v. Tulsa Spine & Specialty Hosp., L.L.C., 2021 OK 68507 P.3d 673Burk tort may be either actual or constructive," and "the action [is] a tort."); Clinton v. State ex rel. Logan Cnty. Election Bd., 2001 OK 5229 P.3d 543Kruchowski v. Weyerhaeuser Co., 2008 OK 105202 P.3d 144Burk tort" has been "extended . . . to include constructive discharges"). See also Collier v. Insignia Fin. Grp., 1999 OK 49981 P.2d 321

¶38 For these reasons, we conclude the district court did not err in dismissing the original petition with regard to fraud in the inducement and constructive discharge.

II. Order Granting Motion to Dismiss Third Amended Petition

¶39 In Dr. McIntyre's Amended Petition in Error, he does not raise any issues pertaining to the order dismissing his third amended petition, though, in response to the Supreme Court's December 2021 order described above, he did attach to his Amended Petition in Error the district court's order granting DMHSAS's motion to dismiss the third amended petition. In his third amended petition, Dr. McIntyre set forth only a theory of breach of an at-will employment contract. In DMHSAS's motion to dismiss the third amended petition, it referenced the employment-at-will doctrine, pursuant to which Dr. McIntyre could "be terminated without cause at any time without incurring liability for breach of contract," quoting Burk v. K-Mart Corporation, 1989 OK 22770 P.2d 24

¶40 Dr. McIntyre stated in his response to DMHSAS's motion to dismiss that DMHSAS's "analysis misses the mark" not because his employment was other than at-will, but because his breach of contract claim pertains to DMHSAS's conduct "during the life of the contract."during the life of the contract that created this cause of action for breach of contract."

¶41 In Burk, the Court explained: "[T]hat every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement, is overly broad and should not be applicable to employment-at-will contracts," 1989 OK 22id. ¶ 22.

¶42 Moreover, while it is possible to draw inferences from the allegations in the third amended petition that the purported contract contained terms that were allegedly breached by the changing of the terms and conditions of Dr. McIntyre's employment by DMHSAS during the life of the contract -- such as by reducing Dr. McIntyre's discretion, as he asserts in his petition, in not allowing him "to practice the full scope of psychiatric medicine," in making his judgments "subject to change by a supervisor located 80 miles away who never saw the patient[s]," and in "depriv[ing] [him] [of] the ability to administer, prescribe and dispense necessary medications" -- the power under the employment-at-will doctrine to terminate the employment relationship at any time also includes the power to change the terms of employment.

¶43 "An employment contract of indefinite duration may be terminated with or without cause at any time without incurring liability for breach of contract." Wheless v. Willard Grain & Feed, Inc., 1998 OK 84964 P.2d 204Burk). See also Booth v. Home Depot, U.S.A., Inc., 2022 OK 16504 P.3d 1153i.e., that either party can end it at any time for any reason, has a corollary: either party can announce new terms to apply going forward." Smith v. Kansas Orthopaedic Ctr., P.A., 316 P.3d 790, 794 (Kan. Ct. App. 2013). Thus, "the terms of an employment-at-will relationship . . . may be changed so that 'where an at-will employee retains employment with knowledge of new or changed conditions, the new or changed conditions may become a contractual obligation.'" Id. at 795 (quoting Pine River State Bank v. Mettille, 333 N.W.2d 622, 627 (Minn. 1983)).

Just as an at-will employment may be terminated at any time, an at-will employee may be demoted at any time. . . . This same principle extends to an employer's unilateral change in the terms of employment . . . .

The at-will presumption authorizing an employer to discharge or demote an employee similarly and necessarily authorizes an employer to unilaterally alter the terms of employment . . . .

Singh v. Southland Stone, U.S.A., Inc., 186 Cal. App. 4th 338, 356, 112 Cal. Rptr. 3d 455, 471 (Cal. Ct. App. 2010) (internal quotation marks omitted) (citations omitted).

Under this rule, accepted in the majority of jurisdictions that have considered the problem, an employer's right to terminate an employee at will necessarily and logically includes what may be viewed as a lesser-included right to insist upon prospective changes in the terms of that employment as condition of continued employment.

Stieber v. J. Pub. Co., 901 P.2d 201, 204 (N.M. Ct. App. 1995) (citations omitted). See Restatement of Employment Law § 2.01 cmt. f (2015) ("The at-will presumption applies not only to employer discharges of employees but also to other adverse employer actions or decisions falling short of discharge, including those that reasonably elicit a resignation from the employee.").

¶44 Because the alleged employment contract was at will, Dr. McIntyre is unable to assert a claim of breach of implied covenants of good faith and fair dealing, and, also for this reason, he is unable to state a claim founded upon DMHSAS's change of the terms and conditions of his employment, including of his discretion, during the life of the contract. Consequently, the district court properly dismissed the third amended petition.

III. Summary Judgment

¶45 In Dr. McIntyre's Petition in Error, he raises the following issues pertaining to the order dismissing his original petition: "The Motion for Summary Judgment granted by the Court below was unlawful in that there are material facts in genuine dispute," and "The Court below in granting DMHSAS['s] Motion for Summary Judgment denied Dr. McIntyre his day in Court on disputed issues concerning the relocation expenses at issue." However, as set forth above, Dr. McIntyre, in his response, did not set forth and number any material facts asserted in DMHSAS's motion which he claimed to be in controversy. See Okla. Dist. Ct. R. 13(b), 12 O.S. Supp. 2013, ch. 2, app. ("[T]he adverse party or parties shall set forth and number each specific material fact which is claimed to be in controversy," and "[a]ll material facts set forth in the statement of the movant which are supported by acceptable evidentiary material shall be deemed admitted for the purpose of summary judgment or summary disposition unless specifically controverted by the statement of the adverse party which is supported by acceptable evidentiary material."). Indeed, Dr. McIntyre's sole argument was that "Defendant's own breach of contract" as asserted in his pleadings "renders the Relocation Repayment Agreement unenforceable." Simply stated, he did not contest the appropriateness of summary judgment on DMHSAS's counterclaim other than to state that dismissal of his claims was inappropriate.

¶46 Having concluded, above, that the district court properly dismissed all of Dr. McIntyre's claims, including his breach of contract claims, we conclude the district court did not err in granting summary judgment in favor of DMHSAS on its counterclaim.

CONCLUSION

¶47 We affirm the order dismissing Dr. McIntyre's original petition, the order dismissing his third amended petition, and the Judgment granting summary judgment to DMHSAS on its counterclaim.

¶48 AFFIRMED.

FISCHER, C.J., and HIXON, J., concur.

FOOTNOTES

51 O.S. Supp. 2014 § 152

Burk Court stated: "We thus follow the modern trend and adopt today the public policy exception to the at-will termination rule in a narrow class of cases in which the discharge is contrary to a clear mandate of public policy as articulated by constitutional, statutory or decisional law." 1989 OK 22

Burk Court stated:

We recognize this new cause of action in tort. It is well settled in Oklahoma a tort may arise in the course of the performance of a contract and that tort may then be the basis for recovery even though it is the contract that creates the relationship between the parties. An employer's termination of an at-will employee in contravention of a clear mandate of public policy is a tortious breach of contractual obligations.

1989 OK 22

Webb v. Dayton Tire & Rubber Co., 1985 OK 7697 P.2d 519

Strong, the Oklahoma Supreme Court stated:

Equitable estoppel is generally understood to prevent one party from taking a position which is inconsistent with an earlier action that places the other party at a disadvantage. The doctrine of estoppel is not ordinarily applicable to state agencies operating under statutory authority. Public officials performing acts which exceed their authority may not bind a public entity. Rather, they lack authority to expand their powers and are bound by mandatory law. The rationale for recognizing a governmental shield from estoppel is to enable the state to protect public policies and interests from being jeopardized by judicial orders preventing full performance of legally-imposed duties. Some stronger, more compelling policy or interest must be advanced before estoppel may be invoked against either the state or a public agency. Persons dealing with public officials are charged with notice of the limitations on their powers. Generally, estoppel is not imposed merely where a party is given incorrect information or a mistake occurs.

Id. ¶ 9 (footnotes omitted).

See 12 O.S. 2011 § 2012

Martin, the Court explained that the "dismissal order was unappealable at the time of adjudication, because it disposed of only one of the many claims pled," but the Court possessed jurisdiction to review that "interlocutory order prior to judgment that dismissed [the plaintiff's] claim[.]" Id. See also In re Guardianship of Berry, 2014 OK 56335 P.3d 779Christ's Legacy Church v. Trinity Grp. Architects, Inc., 2018 OK CIV APP 31417 P.3d 1223

51 O.S. 2011 § 152.1id. § 152.1(B).